M. L. JOHNSON et al. v. PERCY SHARPE et al.

Middle Section. January 10, 1928.

Petition for Certiorari denied by Supreme Court, June 30, 1928.

Keefe & Denney, of Nashville, for appellants.
O. W. Hughes, of Nashville, for appellees.

FAW, P. J. This case was heard by the Honorable R. T. Smith, sitting as Special Chancellor in Part I of the chancery court of Davidson county, on the original bill of the complainants, M. L. Johnson and Dr. G. F. Cummins, the separate answers of the defendants Percy Sharpe, Justice of the Peace, and George A. Jarvis, proof on behalf of the parties, respectively, and the entire record in the cause, upon which the court granted the relief sought by the bill; but taxed the complainants with the costs. Thereupon the defendants prayed, obtained and perfected an appeal to this court, and, through assignments of error, the appellants assert that the findings and decree of the chancery court upon the issues are erroneous, except as to the adjudication of the costs.

The Special Chancellor filed a written finding of facts and opinion, which is as follows:

"The bill in this case was filed by M. L. Johnson and G. F. Cummins against Percy Sharpe, a Justice of the Peace of Davidson county, Tennessee, and George A. Jarvis, to enjoin defendants from issuing an execution against complainant G. F. Cummins on a judgment recovered by said George A. Jarvis against complainant M. L. Johnson and for a decree declaring null and void a stay of execution in said cause, signed by complainant G. F. Cummins.

"Said Jarvis had brought suit against M. L. Johnson in the court of the defendant Percy Sharpe, and on or about the ——— day of January, 1925, judgment was rendered against said Johnson and in favor of said Jarvis by said Sharpe as Justice of the Peace, for about $168 and costs.

"On the same date another judgment in the sum of $50 and costs was rendered against said Johnson and in favor of R. W.

Bratton & Company, agents, by said Sharpe as Justice of the Peace.

"Said Johnson believed that he had a good case for a reversal of the judgment in the Bratton case, and desired to appeal it to the circuit court, and complainant, G. F. Cummins went to the office of said Sharpe to go as security on the appeal bond. He was not acquainted with legal matters and did not know what should be done. Instead of going security on the appeal bond, he stayed the judgment.

"Johnson was preparing to go into bankruptcy and had listed the claim of defendant Jarvis as one of his liabilities. However, by mistake, said Cummins stayed this judgment also. When he found out his mistake he asked the justice to release him from both of these stays, but the justice did not think he had the right to do so, and therefore declined to do it. This suit was thereupon brought.

"It seems plain from the testimony that complainant Cummins made a mistake, and that he is entitled to be relieved from it in this cause. The court therefore makes the injunction heretofore granted against the defendants permanent, but taxes complainant Cummins with the costs."

In the view we take of this record, we are not able to concur in the opinion and decree of the learned Special Chancellor.

At the time complainant Cummins went to the office of defendant Sharpe and stayed the two judgments, defendant Sharpe had not been informed that complainant Johnson desired to appeal from either of the judgments. Complainant Cummins did not inform defendant Sharpe that Johnson desired to appeal, or that he (Cummins) desired to sign an appeal bond. Complainant Cummins alleges in his bill that (when he went to Sharpe's office) "he stated to the defendant Percy Sharpe, Justice of the Peace, that he desired to sign some papers for M. L. Johnson in some sort of case that had been tried in said court," and that "said Sharpe not knowing what action was to be taken in the case, asked the said Cummins if he wished to sign a stay of execution, and the said Cummins, being confused as to the legal terms used by said Sharpe, replied that he did."

The testimony of complainant Sharpe is that complainant Cummins came to his office and asked about the two judgments (against M. L. Johnson) and told him (Sharpe) that he (Cummins) "wanted to stay these two judgments;" that thereupon he (Sharpe), after "qualifying" Cummins (with reference to the property he owned), wrote out a "stay order" in each of the two cases and "read them over" to Cummins, whereupon Cummins signed the "stay order" without asking any questions "as to what they were."

The "stay order" signed by complainant Cummins on the docket of the Justice of the Peace is in these words:

"I hereby swear I own one house and lot No. 1601 Linden avenue, City of Nashville. I hereby stay this judgment, $163.41.

"Geo. F. Cummins."

Complainant Cummins does not claim, either in his bill or his deposition, that he told defendant Sharpe that he had come to his office to sign an appeal bond. In his deposition complainant Cummins does not admit that he told Sharpe that he wished to sign a stay of execution. He says in his deposition that he went to Sharpe's office and told Sharpe that his "purpose then was to sign instrument for M. L. Johnson;" that he does not remember that he "expressed to him the instrument at all," but that Sharpe immediately went to look for it and finally found "some record" and then wrote out the "stay orders" which, Cummins says, he signed without reading them.

Dr. Cummins does not, in express language, contradict the testimony of Sharpe that he (Sharpe) read the stay orders to Cummins before Cummins signed them, but we think it fairly inferable from his testimony that he meant to be understood as testifying that after the stay orders were written by Sharpe, he (Cummins) signed them without reading them or hearing them read.

We are of the opinion that complainant Cummins is bound by the averment in his sworn bill that he told Sharpe that he (Cummins) "wished to sign a stay of execution." This was a material fact, and complainant Cummins cannot be permitted to assume a position inconsistent therewith. Stamper v. Venable, 117 Tenn.. 557, 97 S. W.. 812; Stearns Coal & Lumber Co. v. Jamestown Railroad Co., 141 Tenn., 203, 208 S. W., 334; Johnston v. Railway Co., 146 Tenn.. 135, 160, 240 S. W., 295; Sartain v. Dixie Coal & Iron Co., 150 Tenn., 633, 653, 266 S. W., 313.

Complainant Cummins is a practicing physician and a man of intelligence and education. He states in his testimony that he is not "familiar with court procedure or appeal bonds or anything of that nature;" that he had never signed an appeal bond before, but that he had signed stay orders for others previous to the occasion in question. and that he understood that by "staying a debt for a man" he (the stayor) "promised to pay it if he (the debtor) did not at the expiration of eight months;" that he did not understand what he was signing in the present instance because he did not read the instruments he signed, and that he did not read them "for the lack of good business judgment." The attitude of complainant Cummins on this point is indicated by an excerpt from his cross-examination, as follows:

"Q. And yet you stated you have signed stay orders before and you have stated you knew what a stay order was, on your direct examination. A. I think I would have intelligence enough to know what an instrument meant if I were to read it and study it, but I did not in this case. That is what I am stating, that I didn't understand in this case.

"Q. Is it your opinion, doctor, that simply by not reading the instrument you signed, you were not bound thereby? A. That probably would be a legal question."

Having admitted that he signed the stay order in question, the burden was on complainant Cummins to prove that he did not know its contents (Stone v. Manning, 103 Tenn., 232, 235, 52 S. W., 990), and he has not carried this burden. Defendant Sharpe testifies unequivocally that he read the stay orders to complainant Cummins before they were signed, and this is not denied by Cummins, except inferentially as before stated.

There is no claim that complainant Cummins was misled by any fraudulent misrepresentation or concealment on the part of Sharpe or anyone else. Neither was there a mutual mistake. (10 R. C. L., pp. 300-301).

In order to be relievable in equity, a mistake "must not be merely the result of inattention, personal negligence or misconduct." 10 R. C. L., p. 294.

"While mistake implies want of knowledge, ignorance of material facts alone will not be sufficient to warrant the exercise of equitable jurisdiction, unless it also appears that such ignorance is excusable. For instance, it must not arise from the intentional neglect of a party to investigate the facts, and as a general proposition it may possibly be said that conscience, good faith and reasonable diligence in combination are necessary to call in activity a court of equity." 10 R. C. L., p. 296.

"Ignorance of a stipulation in a contract is no ground for relief, where there is no evidence that he was deceived or misled by any misrepresentation or concealment thereof, and his mistake must be ascribed solely to his own carelessness or inattention as, for instance, where he executes a written instrument without reading it or having it read to him." 10 R. C. L., p. 297.

Moreover, the entry of a stay of execution by a Justice of the Peace is equivalent to a confessed judgment against the stayor. Puckett v. Griffith, 128 Tenn., 565, 162 S. W., 581. See also other cases cited in Note 16 under section 4786, Shannon's New Code.

And "it is generally held that a party may have relief in equity from a judgment at law only when he has been deprived of a legal right by fraud, accident, or mistake, without negligence or fault on his part." 10 R. C. L., p. 297; Puckett v. Griffith, supra, p. 572.

In the instant case, neither the Justice of the Peace, Sharpe, nor the judgment creditor, Jarvis, knew that the purpose in the mind of complainant Cummins was to sign an appeal bond. Without meaning to impugn the veracity of Dr. Cummins in this case, it may be said that a rule which would relieve a stayor of liability merely because of an undisclosed intention in his own mind when signing the stay order "would leave out of view the just rights of the judgment plaintiff and place it in the power of the judgment defendant and a stayor by collusion so to manipulate that such plaintiff would be subjected to the delay incident to a stay, without a countervailing firm assurance of the security supposedly augmented by the stay. The judgment plaintiff would bear the burden of delay and yet be permitted to be cheated of the only compensating benefit." Puckett v. Griffith, supra, p. 571.

It results that the assignments of error are sustained and the decree of the chancery court is reversed, except insofar as it adjudges costs against the complainants, and the complainants' bill is dismissed. The costs of the cause, including the costs of the appeal, will be adjudged against the complainants and the surety on their prosecution bond.

Crownover and DeWitt, JJ., concur.