GREAT AMERICAN INDEMNITY CO. v. UTILITY CONTRACTORS, INC., et al.—111 S. W. (2d), 901.

Middle Section.   May 24, 1937.

Petition for Certiorari denied by Supreme Court December 17, 1937.

464

T. B. Finley and A. A. Adams, Sr., both of Lebanon, for appellant.
S. B. Gilreath, of Lebanon, for appellees.

FAW, P. J. The original bill in this case was filed in the chancery court of Wilson county on March 25, 1932, by the Great American Indemnity Company, a New York corporation domesticated in Tennessee, against Utility Contractors, Inc., a nonresident corporation, organized under the laws of the State of Indiana, with its office and principal place of business at South Bend, Ind. Certain alleged creditors of the Utility Contractors, Inc., were also made defendants to the bill. An amended and supplemental bill was filed by the same complainant against the same defendants and some additional defendants on April 16, 1932. The bill, as thus amended and supplemented, was sustained as a general creditors bill for the benefit of all creditors of the Utility Contractors, Inc. (an insolvent corporation), who may claim its benefits or come in under it.

The Utility Contractors, Inc., had been engaged for some months prior to the time the bill was filed as aforesaid in the laying and constructing of a pipe line from Fox Hill, near Lebanon, to Hunters Point on the Cumberland River, a distance of approximately six miles, pursuant to a contract with Lebanon, Tenn., a municipal corporation, but had abandoned the contract, without completing it, on February 17, 1932.

The Utility Contractors, Inc., had certain personal property in its possession in Wilson county when the bill in this cause was filed, and, pursuant to the prayer of the bill, an attachment was issued and levied upon said personalty, including "one Ingersoll-Rand Air Compressor," a machine which the Utility Contractors, Inc., had been using in the construction of the aforesaid pipe line, and which machine is described in the record. Later a receiver was

appointed to take possession of the attached property and hold and dispose of same under the orders of the court.

The controversy on the present appeal is with respect to the conflicting claims of an intervening petitioner, the Wilson Machinery & Supply Company, a Kentucky corporation, with its situs at Lexington, Ky., on the one hand, and the general creditors of the Utility Contractors, Inc., on the other hand, to the aforesaid Ingersoll-Rand Air Compressor. The Chancellor decided this controversy in favor of the general creditors and adversely to the contentions of the Wilson Machinery & Supply Company and the latter company appealed to this court and has assigned errors here.

Appellant filed an intervening petition below on May 26, 1932, in which it alleged that it is the owner of the aforesaid Ingersoll-Rand air compressor (which is fully described for the purposes of identification in the petition); and petitioner further alleged that it "as evidence of its ownership respectfully presents to the Court a chattel mortgage, dated August 26, 1930, executed by the Utility Contractors, Inc., to secure an indebtedness to the amount of $1470, evidenced by twelve promissory notes, as set out in said chattel mortgage, all of which notes are now past due and none of said notes having been paid except one note for the amount of $123.33, leaving the remainder due and unpaid, secured by said Chattel mortgage" on the aforesaid Ingersoll-Rand air compressor; and that "petitioner will ask this honorable court to grant it permission to take over said air compressor, as above described, and if required, the petitioner will execute a sufficient bond in an amount not to exceed $800, to protect all creditors in the event your petitioner should be unable to establish the right to possession and priority as a first mortgage holder on said property hereinabove described."

Shortly after the aforesaid petition was filed, the Chancellor ordered said Ingersoll-Rand air compressor delivered to petitioner Wilson Machinery & Supply Company upon the filing of a "forthcoming bond," with surety, in the sum of $800, by petitioner; and this was done.

The complainant, Great American Indemnity Company, filed an answer to the petition of Wilson Machinery & Supply Company, putting in issue its material allegations.

On May 14, 1934, the Chancellor rendered a decree in the cause, and, among other matters adjudicated therein, he adjudged that the attachment under the bill in this cause was superior to the claims of the petitioner Wilson Machinery & Supply Company, and he rendered a decree against the Wilson Machinery & Supply Company and the surety on its said forthcoming bond for $800, with directions that when said sum should be paid to the clerk and master, it would become a part of the funds in the hands of

the receiver in the cause, and be distributed as directed in the decree.

On June 1, 1934, the Wilson Machinery & Supply Company filed a petition for a rehearing and for leave to file proof of certain specified statutes of the State of Indiana with respect to the acknowledgment of deeds and mortgages.

In response to said petition to rehear, etc., the Chancellor ordered that the decree complained of in the petition be suspended and stayed, and that the Wilson Machinery & Supply Company be permitted to prove the laws of the State of Indiana, and that, for this purpose, it be allowed fifteen days, and complainant would be allowed fifteen days thereafter to prove the laws of the State of Indiana.

On December 6, 1934, and before the cause was further heard by the Chancellor, the Wilson Machinery & Supply Company filed an "amended petition" as follows:

"This petitioner, in addition to the allegations contained in its petition heretofore filed by it, in this cause, leave of the court being first obtained, says that the notes secured by the Chattel Mortgage as set out in the original petition, in addition to being secured by said Mortgage as set out in the original petition, were and are right and title notes, each retaining title to the machinery in controversy, until each and all of said notes were paid in full, and your petitioner will ask that in the event the mortgage, for any cause, is held to be insufficient, then that your petitioner be decreed entitled to said machinery, described in the petition, and set out in the face of the notes heretofore filed as exhibits to proof submitted by petitioner, there being ten of said notes for the sum of $123.33 each, long since due and unpaid."

Subsequently the time for taking proof was extended to January 10, 1936, and it was further ordered by the court that the petitioner be permitted "to take such other and further proof on the matters in issue as it may see fit to take."

The controversy arising upon the aforesaid petition of the Wilson Machinery & Supply Company was heard by the Chancellor, and a decree adverse to the appellant was thereafter entered on March 21, 1936. The findings and adjudications of the Chancellor are set forth in said decree as follows:

"It appearing to the Court that the mortgage, and the notes secured thereby, relied upon by the said petitioner are insufficient because the mortgage was executed and recorded in St. Joseph County, Indiana, on a void certificate of probate, and that the said mortgage was not entitled to registration and was not notice to attaching creditors; that the property conveyed by the said mortgage to the Wilson Machinery and Supply Company, Inc., was not in the State of Indiana at the time the mortgage was executed

or registered, and has never been at any place in the State of Indiana, and that the said notes and mortgage are to be construed as one transaction and that the taking of the said chattel mortgage was a waiver of any rights the petitioner might have had under said notes and that the attachment of the complainant, Great American Indemnity Company, is a first and prior lien upon all of the property described in the petition, and it further appearing to the Court that the petitioner had executed and filed a bond in this cause on June 3, 1932, payable to J. H. Williams, Clerk & Master of the Chancery Court at Lebanon, Tennessee, with the American Surety Company, as surety on said bond, the condition of said bond being in the event that the Court should decree that the lien created on the property described in the petition by the issuance and levy of the attachment of the complainant, Great American Indemnity Company, was a lien on said property superior or prior to any claim of said petitioner, Wilson Machinery and Supply Company, Inc., that said petitioner, Wilson Machinery and Supply Company, Inc. and its surety aforesaid, would pay to the Clerk & Master aforesaid the sum of Eight Hundred ($800.00) Dollars which sum represented the property described in said chattel mortgage which, by agreement, had been released to the said Wilson Machinery and Supply Company, Inc., upon execution of said bond.

"It is, therefore, ordered, adjudged and decreed by the Court that J. H. Williams, Clerk & Master of the Chancery Court at Lebanon, Tennessee, for the use and benefit of the complainant, Great American Indemnity Company, and the general creditors have and recover of the petitioner, Wilson Machinery and Supply Company, Inc., and the American Surety Company, the surety on its aforesaid Bond filed in this cause on June 3, 1932, the sum of $800.00, for which execution will issue. This sum of money when paid to J. H. Williams, Clerk & Master as aforesaid, will become part of the funds in his hands as Receiver in this cause, and be distributed by him as directed in the decree pronounced in this cause on April 28, 1934, which decree is entered in Minute Book No. 4, at pages 229-241.

"It is further ordered, adjudged and decreed by the Court that the petition of the Wilson Machinery and Supply Company, Inc., be dismissed in so far as it seeks to set up the Chattel mortgage and conditional sales notes and secure a lien on the property described therein."

There was a further decree in favor of Wilson Machinery & Supply Company as a general creditor of the Utility Contractors, Inc., which is not in controversy and need not be stated.

It is seen that the appellant sought by its petition, as amended below, to recover the property for which it sued, upon either of

two theories, viz.: (1) Upon allegations that it had title to the property by virtue of a chattel mortgage thereon executed by the Utility Contractors, Inc., and (2) that it had title to the property by virtue of the retention thereof in purchase-money notes executed to it by Utility Contractors, Inc., and in this court it is insisting, through its assignments of error, brief, and argument that the Chancellor erred in ruling adversely to its contention on either and both propositions.

It seems obvious that the two theories thus advanced by appellant are inconsistent and repugnant, for the chattel mortgage upon which appellant relied in its petition as originally filed could not be effective unless the Utility Contractors, Inc., had title to the property described therein, and conveyed that title to the Wilson Machinery & Supply Company; and the claim asserted through appellant's amended petition, that appellant retained title to the machine in controversy in the notes given by the Utility Contractors, Inc., for the purchase price, is necessarily predicated upon the theory that the Utility Contractors, Inc., has at no time acquired title to said property, but that the title has at all times been vested in appellant.

"An amended bill will not be allowed where the relief sought is inconsistent with that of the original bill; nor where the new matter is repugnant to, or inconsistent with, the original bill, even though stated in the alternative." Gibson's Suits in Chancery (4 Ed.), section 672, and cases there cited. See, also, Commerce-Union Bank v. Sharber, 20 Tenn. App., 451, 100 S. W. (2d), 243, 246, 247.

A party will not be allowed the benefit of an amendatory pleading in positive antagonism to the original pleading without specifically showing some inadvertence in the original pleading, and giving full and satisfactory reasons therefor, and for the change desired to be made. Hill v. Harriman, 95 Tenn., 300, 301, 32 S. W., 202.

Appellant has not sought to show that its assertion of title through a chattel mortgage was the result of inadvertence or mistake in its original petition, but has at all times since its original petition was filed, insisted that the chattel mortgage therein described was and is valid, and that it is entitled to possession of the property in controversy by virtue of said chattel mortgage.

One who has deliberately taken a particular position in the course of litigation, without mistake induced by the opposite party, must act consistently therewith throughout the litigation. Stamper v. Venable, 117 Tenn., 557, 97 S. W., 812; Stearns Coal & Lumber Co. v. Jamestown R. R. Co., 141 Tenn., 203, 206, 208 S. W. 334; Johnston v. Cincinnati Railroad Co., 146 Tenn., 135, 159, 240 S. W. 429; Williams v. Frazer, 6 Tenn. App., 211, 218; Johnson v. Sharpe,

7 Tenn. App., 685, 688; McGregor v. Lehman, 14 Tenn. App., 300; 303.

However, the Chancellor permitted the appellant to file its amended petition below, and considered the claims of appellant as asserted both in its original and its amended petition, and adjudged that appellant was not entitled to relief under its petition, either as originally filed or as amended; and we will now dispose of assignments of error challenging these rulings of the learned Chancellor.

The Chancellor held that the chattel mortgage on which appellant relied was "insufficient" and "was not notice to attaching creditors," for two reasons, the first of which was that it "was executed and recorded in St. Joseph County, Indiana, on a void certificate of probate" and "was not entitled to registration."

The certificate of acknowledgment attached to said chattel mortgage is as follows:

"State of Indiana

"St. Joseph County.

"I, J. Clifford Potts a Notary Public for the County and State aforesaid, do hereby certify that the foregoing mortgage from Utility Contractors, Inc., to Wilson Machinery & Supply Co. was, on the 26 day of Sept., 1930, produced to me in my office and acknowledged before me by the said first party thereto to be its act and deed.

"Given under my hand this the 26 day of Sept. 1930.

"J. Clifford Potts,

" [Seal]                                                         Notary Public."

The record shows, by stipulation, that the statutes of the State of Indiana prescribe a "form of acknowledgment" as follows:

"Form of Acknowledgment—The following, or any other form substantially the same, shall be a good and sufficient form of acknowledgment of any deed or mortgage:

"Before me, E. F. (a Judge or Justice as the case may be) this the——day of——A. B. acknowledged the execution of the annexed deed (or mortgage as the case may be). (1 R. S. 1852, page 232, paragraph 25)."

It is further stipulated that "a true and perfect copy of the forms of acknowledgments for corporations in the State of Indiana, as given by Jones Legal Forms, 7th Edition" are as follows:

"Acknowledgment by a Corporation

"State of Indiana,

"County of——

"I, —— (title of officer), in and for the state and county aforesaid, hereby certify that on this day the foregoing —— was produced to me by the parties and acknowledged by ——, president

of the —— company, to be the act and deed of the —ᶜ— company and ——, president of said company.

"Witness my hand and seal this —— day of ——, 19—
(Signature and title of officer)

"My commission expires on the —— day of ——, 19—.

"Acknowledgment by a Corporation—
Another form.

"State of Indiana

"County of ——

"Be it remembered that on the —— day of ——, 19—, before me (title of officer,) personally came ——, president of the —— Company, who is known to me to be the person whose name is signed to the foregoing deed of conveyance, who, being by me duly sworn, deposes and says that he resides in the city of ——, in the county of ——, and state of ——; that he is president of the —— company; that he knows the corporate seal of said company; that the seal affixed to the foregoing conveyance is the corporate seal of said company; that it was affixed by order of said company, and that he signed his name to said conveyance by like order as president of said company; and acknowledged that he signed said deed as his free and voluntary act, for the uses and purposes therein set forth, and that the said company also executed said conveyance as its free and voluntary act, for the uses and purposes therein set forth.

"In witness whereof I have hereunto set my hand and official seal, the —— day of ——, 19—.

"My commission expires ——.''

There is no proof in the record that the foregoing forms of acknowledgment for corporations "as given by Jones Legal Forms, 7th Edition,'' are prescribed by the laws of Indiana.

But, however this may be, we do not think the certificate of acknowledgment here in question was sufficient to authorize the registration of the chattel mortgage to which it was appended. It does not show by whom the mortgage was "produced to'' and "acknowledged before'' the notary public.

"A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law.'' Dartmouth College v. Woodward, 4 Wheat. U. S., 518, 536, 636, 4 L. Ed. 629, 659. It cannot act or speak except through natural persons duly authorized. First National Bank v. Casselton Realty & Investment Company, 44 N. D., 353, 175 N. W., 720, 29 A. L. R. 911, 915.

And it is necessary that the certificate disclose the identity of the person making it as an authorized officer or representative of the corporation. 1 Am. Jur., page 362, section 115; 1 Corpus Juris Secundum, Acknowledgments, pages 857, 858; Annotation

29 A. L. R. page 989 et seq.; First National Bank v. Casselton Realty & Investment Co., supra.

The acknowledgment being ineffective to authorize its registration, the mortgage did not receive any added efficacy by being copied on the books in the registrar's office, and it did not affect the rights of creditors or third parties. Best & Co. v. Wolf & Co., 67 Colo. 42, 185 P., 371, 29 A. L. R. 899, 903; Jefferson County Bank v. Hale, 152 Tenn., 648, 659, 280 S. W., 408; Newton Finance Corporation v. Conner, 161 Tenn., 441, 447, 33 S. W. (2d), 95, 72 A. L. R. 1286.

For the reasons stated, we find that the Chancellor did not err in holding that "said mortgage was not entitled to registration and was (therefore) not notice to attaching creditors."

The Chancellor also held that the appellant's mortgage was inferior to the rights of attaching creditors in this case for the further reason that the mortgaged property was not in the State of Indiana at the time of the execution of the mortgage, or of its attempted registration in the State of Indiana, or at any other time, and the mortgage was not registered at any time in a state where the property was situated.

Certain facts bear upon the question thus decided by the Chancellor particularly in the deposition of C. G. Sageser, secretary of appellant corporation, from which deposition we quote as follows:

"Q. You have heretofore testified that the sale of the property in this case was made by a Mr. Aitken representing your company? State the history as you remember of the sale of this property where it was made, when made and the terms under which it was made. A. Our salesman, Mr. Aitken, went to South Bend, Indiana, to make a sale of some equipment and he was advised by Mr. R. L. Gray, President of the Utilities Contractors Company, Inc., that he needed an Air Compressor, a Jack Hammer and other equipment that a contractor would use in his line of work for some jobs that he had in various states, and while Mr. Aitken was there he obtained an order for this equipment.

"Q. When was that now? A. Sometime in August, 1930.

"Q. Where was this transaction? A. At South Bend, Indiana.

"Q. What terms was the property sold upon, for what price? A. This equipment was to be paid for $375 down payment and credit for the balance and 12 separate notes for $123.35, each spaced one month apart and bearing interest at the rate of 6% per annum from date.

"Q. How were the deferred payments to be evidenced? A. They were to be evidenced by 12 title retention interest bearing notes.

"Q. What was the agreement at that time of the sale as to where the machinery was to be delivered? A. There was no agreement at

the time, he was to advise our Company later as to where the equip-ment and on what job the equipment was to be shipped.

"Q. Where was the machinery at the time of the sale? A. It was at the factory.

"Q. Where was the factory? A. At Painted Post, New York.

"Q. How long after the sale before the machinery was delivered? A. Just a few days. About a week or 10 days.

"Q. How did you first learn where the machinery was to be de-livered? A. Either at our office or our salesman was advised but verbally, that it was to be shipped to Monticello, Ky.

"Q. Was the machinery shipped direct from New York to Monticello, Ky.? A. No.

"Q. Where else was it shipped? A. It was shipped to us directly at Lexington, Ky. and was taken into our shop and repainted, painted yellow, requested by Mr. Gray. And then it was shipped to Monti-cello, Ky. to Gray.

"Q. Who is Mr. Gray? A. President of the Utilities Contractors, Inc.

"Q. Why did you take a chattel mortgage to secure the notes? A. Because of the fact Mr. Gray was doing business in Various States and in view of the fact his home office was South Bend, In-diana, we thought it best to take this mortgage and have it recorded there in addition to our Title retention notes. . . .

"Q. When and where was the mortgage prepared? A. The mort-gage was prepared at Lexington, Ky. about the time the sale was made, a day or two thereafter.

"Q. When was it forwarded to South Bend, Indiana, to be recorded? A. It was forwarded about 30 or 34 days thereafter.

"Q. After what? A. After the papers were drawn up.

"Q. Were you present at the time the mortgage was acknowl-edged, in South Bend, Indiana or anybody representing your com-pany? A. No.

"Q. Had you forwarded the mortgage to Mr. Gray to be acknowl-edged by him and returned? A. Yes sir. . . .

"Q. When did you first learn that this machinery had been re-moved from the State of Kentucky to the State of Tennessee? A. Sometime in April, 1931.

"Q. Have you any letter, or communications or correspondence of any kind that would show when you first learned that the ma-chinery was in the state of Tennessee? A. I have an order for $1500.00, given me by Mr. Gray on the City of Livingston, Tennessee, dated August 7, 1931. Mr. Gray stated that he had approximately the sum due him as balance on a contract there, so I took this order and presented it to the Mayor, Charles Cullom, now deceased, and was told by the Mayor that he couldn't accept this order because of the fact that the contract hadn't been completed and he thought

it would be necessary for the City of Livingston to complete this job and on its completion that the contractor would probably be owing them a small sum. . . .

"Q. When did you ascertain that this machinery had been brought to Lebanon, Tennessee? A. About the time, just a little later, I received this Order on the City of Livingston.

"Q. What steps did you take after you learned the machinery had been brought to Lebanon, Tennessee, other than to procure this order filed as Ex. '2' to your deposition? A. I contacted on the telephone several times, when and where I could locate him and at no time did he pay me any money. He just made promise from time to time about delays that he had had and the first word that I had of him getting into any difficulties in Lebanon was in a letter which he wrote our Company, under date of May 2, 1932, the letter which I have.

"Q. By whom is that letter signed? A. R. L. Gray.

"Q. Where does it purport to have been written? A. South Bend, Indiana. . . .

"Q. What steps did you take after receiving this letter to protect the company? A. After receiving that letter I became alarmed about the matter and as soon thereafter as possible when I could find it convenient to leave my business I came to Lebanon, Tennessee, and ascertained that Utilities Contractors Inc., was very much involved and that our equipment had been attached.

"Q. What steps did you take then to protect your rights? A. I employed counsel, secured a portion of my machinery. Gave bond for the balance. Secured what I could find.

"Q. Did you file your petition in Court in this cause at that time or about that time? A. I did."

It thus appears from the testimony of appellant's secretary that the property described in the mortgage was never in the State of Indiana; that it was delivered to the Utility Contractors, Inc., in the State of Kentucky, and was later removed by the Utility Contractors, Inc., to the State of Tennessee, first to Overton county, and later to Wilson county; that appellant knew for approximately one year before the mortgaged property was attached in this case that it had been removed to Tennessee, and knew that it was in Wilson county, but made no effort to obtain possession of it or assert any claim thereto. There was no registration, or attempted registration, of the mortgage in Kentucky or Tennessee.

A chattel mortgage of personal property executed in another state, and good according to the laws of that state, will be enforced against attaching and execution creditors of the mortgagor, by the courts of this state where the property is subsequently brought, unless it be contrary to some settled public policy of this State declared by statute or otherwise. Bank v. Hill, Fontaine &

Co., 99 Tenn. 42, 44, 45, 41 S. W., 349; Hughes v. Abston, 105 Tenn., 70, 72, 58 S. W., 296.

But the rule just stated does not control the instant case, for the reason that the mortgage here involved was not good according to the laws of the State of Indiana. The registration of the mortgage in Indiana (if the acknowledgment thereto had been sufficient) did not operate as notice to attaching creditors of the Utility Contractors, Inc., because the property was never in that state. Ames Iron Works v. Warren, 76 Ind., 512, 40 Am. Rep., 258 (opinion in evidence in this case by stipulation). This is not only the rule in Indiana, but it is the rule ''established by the great weight of authority.'' See Annotation, 57 A. L. R., p. 708 et seq.

In the annotation just cited it is said that the case of Lally v. Holland, 1 Swan (Tenn.), 396, 399 (in which the contrary view was ''apparently taken''), is ''against the great weight of authority.''

In Newsum v. Hoffman, 124 Tenn., 369, 375, 137 S. W., 490, our Supreme Court overruled Lally v. Holland, supra, on the point now under consideration; and we agree with the Chancellor on this point.

█ The rule hereinbefore stated, that a chattel mortgage executed in another state, and good according to the laws of that state, will be enforced by the courts of this state when the property is brought here, etc. (which rule is based on comity between the states), will not be applied where it appears that the mortgagee consented to the removal of the property to this state, or had knowledge of such removal and failed to assert its rights within a reasonable time. Hamblen Motor Co. v. Miller & Harle, 150 Tenn., 602, 607, 266 S. W., 99; Newsum v. Hoffman, supra.

█ In the instant case, appellant knew for approximately one year before the attachment was levied that the mortgaged property was in this state, and knew that the Utility Contractors, Inc., was financially embarrassed, but appellant took no steps to assert its claims against the property until after it was impounded by the attachment in this case. For this further reason, we are of the opinion that the Chancellor did not err in decreeing that the attachment was superior to appellant's mortgage.

█ █ The Chancellor further held that ''the said notes and mortgage are to be construed as one transaction, and that the taking of said chattel mortgage was a waiver of any rights the petitioner might have had under said notes'' (evidently meaning to say that the petitioner waived any rights it might otherwise have had to claim that it had retained title to the property as a conditional vendor).

Each of the notes executed by the Utility Contractors, Inc., to the appellant contained (after the promise to pay and a description of the property in controversy) the following provisions:

''Which property has this day been purchased by the under-

-signed from B. B. Wilson Co. and back to whom the undersigned, for the above consideration, hereby sells, transfers and conveys, the entire ownership in said property absolutely, for the purpose ·of securing them in the indebtedness herein set up. In other words, this is a lien note and conditional sale, made with the understanding that when said note is paid the title to said property passes to the undersigned but until such is fully satisfied same remains in ·said B. B. Wilson Co. This conditional sales or mortgage shall secure said company in any additional sum charged to the undersigned ·on open account before maturity herein in any sum not to exceed $—.''

It is seen that the notes contain provisions appropriate to a conveyance of the described property from the Utility Contractor, Inc., ·to the appellant, and also other provisions appropriate to a retention of title by the appellant as in case of a conditional sale. The notes and mortgage were contemporaneously prepared by appellant and forwarded to the Utility Contractors, Inc., at South Bend, Ind., and were there contemporaneously executed by the Utility Contractors, Inc., and returned to the appellant. The Chancellor was right in holding that ''the notes and mortgage are to be considered as one transaction.'' 6 R. C. L., p. 851, par. 240, 13 C. J., p. 528, sec. 487.

As hereinbefore pointed out, the acceptance of a chattel mortgage on the property was inconsistent with and repugnant to a claim that the title had never vested in the purchaser but was retained by the seller. ''The execution of a chattel mortgage deliberately made is conclusive evidence upon the one hand of an absolute purchase from the seller, and the reconveying of the title by way of mortgage to the mortgagee. And even in cases of doubt the prevailing rule is that instruments dealing with the sale of personal property are to be rather construed as chattel mortgages than as conditional sales.'' Sweeney v. Linotype Co., 8 Tenn. Civ. App., 244, 247.

It was so ruled by the Supreme Court of Alabama in a case involving facts in material respects similar to the facts of the instant case. In that case, the court said: ''The relation of conditional vendor and vendee, and of mortgagee and mortgagor, cannot subsist as to the same property at the same time,'' and that, ''if there be doubt as to whether the instrument evidencing the transaction constitutes a mortgage, or a conditional sale, the law favors construing it as a mortgage. This, because of the oppressive features of conditional sales, especially in certain forms of sales upon the installment plan'' (citing authorities). Perkins v. Skates, 220 Ala., 216, 124 So., 514, 515.

We are of the opinion that the appellant is not in a position to

claim any rights as a conditional vendor retaining title in the notes given for the purchase price of the property involved in this case. ██ ██ The case of McDonald Automobile Company v. Bicknell, 129 Tenn., 493, 167 S. W., 108, Ann. Cas. 1916A, 265, cited for appellant, is not in point. In that case there was no mortgage by the purchaser to the seller. Appellant is not only precluded by its procurement and acceptance of the chattel mortgage from claiming title through retention thereof in the notes, as stated in the Chancellor's decree, but also because it cannot obtain relief upon a theory inconsistent with and repugnant to its original petition, in which it distinctly and unequivocally asserted its right to the possession of the property in controversy by virtue of the mortgage lien. See Stamper v. Venable, supra, and other cases cited, in accord.

██ ██ For a further reason, not mentioned in the Chancellor's decree, but pointed out by the brief of appellee, appellant, if otherwise entitled to rely on its claim of retention of title in the notes, would not be entitled to relief on that theory, because of the fact that the notes were not executed until the lapse of several weeks after the sale and delivery of the property. By chapter 15 of the Acts of 1899 (carried into the Code of 1932 as section 7286), it is provided that: "In all conditional sales of personal property, wherein the title to the property is retained by the vendor, as a security for the payment of purchase money, such retention of title shall be invalid unless evidenced by a written contract or memorandum, executed at the time of the sale."

The record contains no evidence of the laws of Indiana or Kentucky governing conditional sales, and we must presume that they are the same as the laws of Tennessee on that subject. De Soto Flooring Co. v. Table & Cabinet Works, 163 Tenn., 532, 534, 43 S. W. (2d), 1069, and other cases there cited.

There is no evidence of any "written contract or memorandum" relating to the sale of the property in question until the execution of the notes and mortgage, and these were executed several weeks after the sale and delivery of the property to the Utility Contractors, Inc.; hence, any attempted retention of title in the notes was "invalid." Sanders v. Farmers Union Bank, 5 Tenn. App., 560, 574.

It results that appellant's assignments of error are overruled and the decree of the chancery court in this cause, in so far as it is brought up for review by the appellant, is affirmed, and a decree will be entered accordingly.

The costs of the appeal will be adjudged against the appellant and the surety on its appeal bond.

Crownover and Felts, JJ., concur.