Joe C. MILLER, Frances Miller and
Joan Stiles, Plaintiffs/Appellants,

v.

Charles J. RESHA, III, and Roger K.
Garner, Defendants/Appellees.

Supreme Court of Tennessee,
at Nashville.

Sept. 23, 1991.

Rehearing Denied Dec. 2, 1991.

Richardson R. Lynn, Nashville, for plaintiffs, appellants.

Hugh C. Howser, Cynthia E. Berry, Trabue, Sturdivant & DeWitt, Nashville, for defendants, appellees.

## OPINION

O'BRIEN, Justice.

The plaintiffs in this case, Joe C. and Frances Miller, and Joan Stiles, initiated this action in the Chancery Court for Davidson County to enforce specific performance on two (2) contracts for the sale of two parcels of land owned by the defendants, Charles J. Resha, III, and Roger K. Garner, located on Elm Hill Pike in Donelson, Davidson County. After a full hearing in which Mr. Miller and Ms. Stiles presented the plaintiffs' case and Mr. Resha testified on behalf of the defendants, the trial court entered a memorandum and order. He found that on 13 September 1983 and 21 September 1983 defendants entered into contracts to sell two (2) tracts of land to the plaintiffs Joe and Frances Miller, subject to the release of a U.S. government tax lien on the property. On 13 January 1984 the parties rewrote the contracts, substituting one of the parcels for another. The new contracts did not set an expiration date, but provided "the sale will be closed as soon as possible." The

new contracts were submitted to tax authorities in an attempt to remove the tax lien. The parties were notified by letter dated 7 February 1984 that the lien would not be discharged. On 5 October 1984 the sellers notified the purchasers that they had been unable to remove the tax lien and wanted to void the agreements, offering to return the earnest money. On 11 October 1984 Ms. Stiles, a broker involved in the sale, took an assignment from the purchasers on one of the contracts. On 9 September 1988 this action was filed. As a conclusion of law the Court stated that, "when a time performance is not specified in a contract, the law will impose a reasonable time." He held that after a good faith effort to get the tax lien released failed, defendants were within their rights to consider the contracts at an end. He dismissed the action at plaintiff's cost.

Plaintiffs appealed the judgment. In a split decision, the Court of Appeals found that both parties knew the tax liens were an impediment to the closing. Consequently, "as soon as possible" meant whenever those liens were lifted. The court went on to find that reasonable time meant what was reasonable in this circumstance. The court cited the conflicting testimony at trial and then credited the buyer's version of what was deemed reasonable. The decision of the trial court was reversed and specific performance ordered.

The dissenting judge found all of the surrounding circumstances indicated that the parties contemplated the sellers would be able to clear title within a short period of time. He also found that the bargain was no longer a fair one; and thus, specific performance was not an equitable remedy.

Our review of this record compels us to concur with the dissent in the court below. We reverse the judgment of the majority opinion which found the trial court to be in error.

■ We are of the opinion the trial judge was correct in his findings of fact that the January 1984 contracts were revisions of the original contracts for the sale of the two tracts of land written in September 1983. The Court of Appeals in the majority decision did not consider the September 1983 contracts in any of their aspects in reaching their decision. They relied entirely on the provisions of the January 1984 contracts. The correct rule to be followed in a case of this nature is that stated in *Real Estate Management v. Giles*, 41 Tenn.App. 347, 293 S.W.2d 596, 599 (1956).

> Generally, in construing contracts the Courts not only look to the language of the instrument, but ascertain if possible, the intention of the parties, and the construction which is fair and reasonable will prevail. (Citations omitted). And where several instruments are made as part of one transaction, they will be read together and each will be construed with reference to the other. *Great American Indemnity Co. v. Utility Contractors, Inc.*, 21 Tenn.App. 463, 111 S.W.2d 901; 17 C.J.S., Contracts, § 298, p. 714.

There is no doubt that the Court of Appeals majority comprehended this rule in their finding that all the parties knew when the 13 January 1984 contracts were executed that the tax liens were outstanding and that it was not possible for defendants to furnish a good title until such time as the tax liens were released. However, in the application of the rule we must look first to the September 1983 contracts which, according to her testimony, were prepared by Joan Stiles. The first, dated 13 September 1983 provides for $400 earnest money to be deposited with Cowan Real Estate Company against the purchase price of $36,000 for part of Lot No. 175 on Elm Hill Pike, Donelson, Tennessee, specifically described as "2nd lot from Traders Post, 60 foot road frontage on Elm Hill, being 50 foot from Traders Post lot to extend back 150 feet. Subject to seller being able to get U.S. Government lein (sic) lifted on property." The second contract dated 21 September 1983 provides for $400 earnest money against the purchase price of $36,000 for property described as "Lot on Elm Hill being part of Lot # 175. This lot is third lot from Traders Post. Sixty foot frontage, 150 feet deep." This contract too is "subject to lien being released from U.S. Government" and contains a pro-

vision that the sale will be closed within one year of above date. The second contract has the unique provision that the buyer had the right to use the property and install water and sewers and would not be reimbursed if property was not closed. Each of the four (4) contracts were prepared on Dobson and Johnson, Inc., printed forms. Each of them contain as part of the printed material that "Time is of the essence of this contract and all of the conditions thereof."

According to the testimony of Ms. Stiles, the two (2) contracts drawn on 13 January 1984 were prepared by Mr. Charles J. Resha, II, agent for Cowan Realty Company, and father of one of the sellers. The contracts are obviously substituted for the September 1983 contracts. The first of these replaces the contract made on 13 September 1983 for the 50–foot lot referred to as the second lot from Traders Post. However, it indicates the earnest money in the sum of $400 was deposited on 21 September 1983. It indicates that the sale would be closed as soon as possible. The second contract refers to earnest money deposited on 13 September 1983. However, it substitutes Lot 1, joining Traders Post property for the third lot from Traders Post, each with 60–foot frontage and being 150 feet deep. This contract too notes that the sale will be closed as soon as possible. The only reasonable construction which can be given to the four (4) contracts when considered together and with reference to each other, is that the release of the tax lien on the property was a condition precedent and the sale, purchase and transfer of the property involved was dependent upon that release within the time stated in the contracts.

It so occurred that due to illnesses and other matters beyond the control of the parties, only three (3) people testified at the hearing of this case, that is, Joan Stiles, plaintiff, and agent for Dobson and Johnson Real Estate Agency; Joe Miller, plaintiff; and Charles J. Resha, III, one of the defendants. Among the three, the testimony of Joan Stiles was most revealing. She testified, inter alia, that Mr. Miller, a prior customer, called her concerning a commercial property upon which to put a used car lot. Through her agency's commercial department she learned the lots owned by Mr. Resha, III and Roger K. Garner were for sale. She contacted Mr. Resha, II, agent for Cowan Real Estate and the contracts were prepared. In the discussions with him they discovered the existence of the tax lien. He was of the impression they would be released in a short time. At the time the September contracts were drawn by her, Mr. Miller wanted to purchase Lot No. 1 upon which another tentative purchaser apparently had a contract or an option. In January 1984 Lot No. 1 was released and the contracts were rewritten by Cowan Realty's agent. While this was being done he noted in each contract that the sale would be closed as soon as possible. She suggested that the entry should be that the lien was to be removed as soon as possible and he responded, "It's not necessary, because when it's removed it's your property." In reference to a termination date it was her testimony that the entry on the 21 September contract was that, "The sale be closed within one year of above date" was made at Mr. Miller's request. It was her further testimony that Mr. Miller got tired of waiting for the lien to be removed and he purchased other commercial property for his car lot business.

It is plain from the record that it was contemplated by all of the parties that the release of the tax lien would be consummated as soon as possible, and it was not the intent of any of them that the closing would be as soon as possible after the tax liens were removed. Within three (3) days after the January 1984 contracts were signed counsel for defendants submitted an application to the tax division of the United States Department of Justice for discharge of the tax liens. A reply was received from the government in approximately three weeks that the discharge applications had been rejected. A copy of this correspondence was sent to Ms. Stiles. She apparently continued to communicate with the Cowan Realty agent until he finally told her, "I'm washing my hands of it. I can't do anything else about it. It is up to

my son and the others." Ultimately, on 5 October 1984 Charles Resha, II, wrote to Mr. and Mrs. Miller specifically repudiating the September contracts on the basis that more than a year had expired since the agreement was signed; there was no foreseeable date for elimination of the U.S. Government lein (sic); that time was of the essence of the contract and the 21 September agreement contained a condition that "the sale will be closed within one (1) year of the above date." We are of the opinion that under the terms and conditions of the various contracts read together and construed with reference to each other that the sellers were entitled to repudiate the contracts.

Within six (6) days of Mr. Resha's letter to the Millers an assignment of Lot No. 2 was made by them to Ms. Stiles. Approximately one (1) month later she notified Mr. Resha that the Millers considered the January 1984 contracts to be valid and enforceable and they would seek specific performance of the contract if the sale was not consummated at such time as the liens were released. The earnest money refund which had been made by Mr. Resha was returned. On 20 February 1986 Ms. Stiles was advised by counsel for the defendants that they were still in litigation in reference to the tax liens and expressing the belief that the contracts of January 1984 were not valid and enforceable. The correspondence further stated that the government would not release its liens or allow defendants to sell the property. A voluntary termination of the contracts was requested. In May 1986 a similar letter was posted advising that the government would not release its lien and in the absence of a voluntary termination agreement suit would be filed to rescind the contracts.

The federal tax liens were not released until April 1988, more than four (4) years after the January 1984 contracts were executed. The only evidence in reference to the value of the property came from the testimony of one of the defendants who testified that at the time of trial the property was worth $160,000. He also testified that his failure to mention the January contract in his correspondence to the Mil-

lers was inadvertent and the term "as soon as possible" in the contracts referred to as soon as the federal tax liens were released. It was his opinion at the time the contracts were written that the liens would be released between six months to a year at the most.

■ Whether a contractual provision is or is not a condition precedent depends upon the parties' intentions which should be gathered from the language they employ and in light of all the circumstances surrounding the contracts execution. *Harlan v. Hardaway*, 796 S.W.2d 953, 957–58 (Tenn.App.1990). The contracts entered into by the parties were conditional and their very existence and performance depended on the happening of the contingency or condition expressly stated. They were not fulfilled within the time span stated in the 21 September 1983 contract. It was certainly the intent of the parties that the tax liens would be released as soon as possible and, at the outermost limits, within the term of one (1) year stated in the September contract. Unquestionably the release of the tax lien on the property to be conveyed in this case was a condition precedent which failed, entitling the defendants to rescind the contracts.

■ Having found that the contracts between the parties were terminable by the defendants, we wish to say that if specific performance was a viable alternative plaintiffs would not be entitled to a judgment. Although they prayed for damages in their complaint, they have neither alleged or proven damages in any amount. Moreover, the right to specific performance in any particular case is governed by the ordinary principles of equity.

"Equity, in decreeing specific performance, requires not only that the contract be just and equitable in its provisions, but that the consequences of specific performance likewise be equitable and just. One of the general rules formulated and followed is that this equitable relief will not be granted if, under the circumstances of the case, the result of the specific enforcement of the contract

would be harsh, *inequitable*, oppressive, or result in an unconscionable advantage to the plaintiff, even though the complainant *has no intention of taking an unfair advantage*, and even though the contract may be valid and enforceable at law. In every case where a specific performance is asked, the question must be whether the exercise of the power of the court *is demanded to subserve the ends of justice*, and unless the court *is satisfied that it is right in every respect, it will refuse to interfere.*" (Italics in original). *T.J. Moss Tie Co. v. Hill*, 235 S.W.2d 587, 588–89 citing 49 Am.Jur. Section 58, page 72.

The judgment of the Court of Appeals is reversed. The trial court judgment is affirmed. The costs are assessed against the plaintiffs.

REID, C.J., and DROWOTA, DAUGHTREY and ANDERSON, JJ., concur.