IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
JULY 10, 2002 Session

## SUMNER COUNTY BOARD OF EDUCATION v. MANSKER FARMS, LLC

**Direct Appeal from the Chancery Court for Sumner County**
**No. 99C-274; The Honorable Tom E. Gray, Chancellor**

---

**No. M2001-01888-COA-R3-CV - Filed January 23, 2003**

---

This is a dispute over an option contract. Mansker Farms, a land developer, offered the Sumner County School Board an option on land in its development to build a school. A dispute arose over whether a condition precedent existed in the contract and whether the nonfulfillment of this condition prevented the School Board from exercising the option. The trial court found that no valid contract existed because there was no meeting of the minds between Mansker Farms, who gave the option, and the Sumner County Board of Education, who attempted to exercise the option. For the following reasons, we affirm the ruling of the trial court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY KIRBY LILLARD, J., joined.

John R. Phillips, Jr., Gallatin, TN, for Appellant

Joe H. Thompson, Gallatin, TN, for Appellee

### OPINION

#### Facts and Procedural History

In October, 1995, the Appellee, Mansker Farms, LLC ("Mansker Farms") purchased approximately 500 acres of land in Hendersonville, Tennessee for a residential development. Mansker Farms was approved by the Hendersonville Regional Planning Commission ("the HRPC") to proceed with development only on a portion of the property known as Phase I. In September, 1995, Mansker Farms' chief manager, Mack McClung ("Mr. McClung") contacted the Appellant, the Sumner County Board of Education ("the Board"). Mr. McClung offered the Board four lots in the development upon which to build an elementary school in exchange for $186,000.00-- the cost

to increase the sewer capacity for the development. Contract negotiations ensued between Mansker Farms and the Board, including the exchange of several faxed copies of a proposed option contract between the parties. The negotiations proved fruitless when in late 1996, the Board turned down Mansker Farms' offer.

In 1997, Mansker Farms attempted to gain approval from the HRPC to begin development of the remainder of the property. At a meeting of the HRPC where Mansker Farms had unsuccessfully proposed a master development plan, Mansker Farms was told by the Ms. Baldwin, the Hendersonville city planning director, that the inclusion of a school in the development could help attain approval for the plan. Mansker Farms again contacted the Board and offered land in the development for an elementary school. In April 1998, negotiations broke off between Mansker Farms and the Board. In the summer of 1998, however, negotiations resumed when the Board expressed interest in building a middle school in the development. During these on-again-off-again negotiations, Mr. McClung and Leah Dennen, an attorney working for the Board, passed draft copies of an option contract back and forth as the agreement between the parties took shape. These draft copies contained various changes, including handwritten changes made to the language of the agreement by the parties.

On August 19, 1998, Mr. McClung forwarded an executed option contract to the Board. On October 21, 1998, the Board returned an almost identical option contract to Mr. McClung. The option contract stated that, if exercised, the cost to the Board for approximately 20 acres of Mansker Farms would be $50,000.00 for the sewer line installation to the property. Mansker Farms made a rezoning request to the City of Hendersonville ("the City") which included the school and which asked for higher density zoning so that Mansker Farms could build town homes. In March, 1999, the Board sent two letters informing Mansker Farms that it wished to exercise its option. Mansker Farms did not reply to the letters. On April 13, 1999, the City rejected Mansker Farms' rezoning request. Mansker Farms then refused to sell the property to the Board.

On September 29, 1999, the Board filed a complaint for declaratory judgment and specific performance against Mansker Farms in the Chancery Court of Sumner County. The complaint requested that the trial court order Mansker Farms to sell the property to the Board under the option contract. On November 19, 1999, Mansker Farms filed an answer alleging that its duty to perform under the option contract never arose because the condition precedent of obtaining higher density zoning did not occur.

On May 21 and 22, 2001, a trial was held. On July 11, 2001, the trial court entered an order dismissing the Board's complaint. The trial court found that there was no meeting of the minds, and thus not a valid contract. The trial court found that each side of this dispute attributed a different meaning to Paragraph 5(d) of the contract. Mansker Farms read Paragraph 5(d) to mean that having their property rezoned was a condition precedent to conveying the land to the Board. The Board, however, read Paragraph 5(d) as applying only to the 20 acres in consideration for building the school and was not contingent on anything. The trial court held that because Paragraph 5(d) was "capable of being understood in two or more possible senses," it was ambiguous and that "[w]hen

a contract term is ambiguous, there is no meeting of the minds." The Board filed a timely notice of appeal and presents the following issues for our review:

I. Whether the trial court erred by determining that the option contract is ambiguous.

2. Whether, assuming that the option contract is ambiguous, the Board's interpretation should prevail.

## Standard of Review

The standard of review for a non-jury case is *de novo* upon the record. *See Kendrick v. Shoemake*, No. E2000-01318-SC-R11-CV, 2002 Tenn. Lexis 489, at * 6-7 (Tenn. 2002). The findings of fact made by a trial court are given a presumption of correctness that will not be overturned unless the evidence preponderates against those findings. *See* Tenn. R. App. P. 13(d); *see also Bank/First Citizens v. Citizens and Assoc.*, 82 S.W.3d 259, 262 (Tenn. 2002) (citing *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001)). A trial court's ruling on a matter of law, however, will be reviewed "'under a pure *de novo* standard . . . according no deference to the conclusions of law made by the lower court[].'" *Bank/First Citizens*, 82 S.W.3d at 727 (quoting *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001)). The interpretation of a written agreement is a question of law, and, therefore, will be reviewed *de novo* with no presumption of correctness given to the trial court's findings of law. *Union Planters Nat'l Bank v. American Home Assurance Co.*, 865 S.W.2d 907, 912 (Tenn. Ct. App. 1993).

## Law and Analysis

There is no dispute between the parties as to whether or not they properly executed an option contract. The dispute arises in the interpretation of their agreement, and specifically as to whether Paragraph 5 Section (d) created a condition precedent which the nonfulfillment of prevents the Board from exercising the option. The option contract begins by naming the parties, stating the consideration, describing the land on which the option is being given ("parcel IV-4 of the Mansker Farms Development Plan"), and giving a five year time frame in which the option must be exercised. The contract continues with a sentence that reads "[s]ubject to the following terms and conditions" followed by eight numbered paragraphs. Paragraph 5, and more specifically Section (d) of Paragraph 5, is the crux of the present dispute. It reads in pertinent part:

It is further understood between the parties that the exercise of the option is subject to the following:

(d) Approval of zoning and changes necessary from the City of Hendersonville or other governmental authority for the construction of the public school and related facilities including the proposed site plan and rezoning as hereinabove recited. School system agrees to support and/or assist Seller with said change.

Before we look at the specifics of the clause, we must determine its effect. If it is a condition precedent, it will affect the Board's ability to exercise the option, but if it is not, any discussion about Paragraph 5(d)'s meaning is pointless. The creation of a condition precedent as well as its effect has been summed up as follows:

> A contractual duty subject to a condition precedent is not required to be performed until the condition occurs or its nonoccurrence is excused. *Covington v. Robinson*, 723 S.W.2d 643, 645 (Tenn. Ct. App. 1986); *Strickland v. City of Lawrenceburg*, 611 S.W.2d 832, 837 (Tenn. Ct. App. 1980); Restatement (Second) of Contracts § 225(1) (1981). The existence of a condition precedent depends upon the parties' intention, which courts may discern from the contractual language and the circumstances surrounding the contract's execution. *Miller v. Resha*, 820 S.W.2d 357, 360 (Tenn. 1991); *Harlan v. Hardaway*, 796 S.W.2d 953, 957-58 (Tenn. Ct. App. 1990) . . . . No special language is needed to create a condition precedent. The nature of the agreement and its surrounding circumstances may sufficiently manifest the parties' intention to make a contractual obligation conditional. *Harlan v. Hardaway*, 796 S.W.2d at 957-58; Restatement (Second) of Contracts § 226 cmt. a (1981). However, the presence of a condition is usually signaled by a conditional word or phrase such as "if," "provided that," "when," "after," "as soon as," "on condition that," and "subject to." *Harlan v. Hardaway*, 796 S.W.2d at 958; Restatement (Second) of Contracts § 226 cmt. a; 3A *Corbin on Contracts* § 639.

*Holland v. Holland,* No. M1999-02791-COA-R3-CV, 2001 Tenn. App. LEXIS 409, at *10-12 (Tenn. Ct. App. June 1, 2001).

The Board contended at trial and at oral argument that Section 5 was its "political clause" meant to allow it to gracefully exit deals that fell through and, thus, was not intended to benefit Mansker Farms. Mansker Farms, on the other hand, contends that because the "subject to" language is contained at both the beginning of the section of numbered paragraphs and at the beginning of Paragraph 5, a condition precedent exists which must be fulfilled before the Board can exercise its option. In light of the above statement of law, and our review of the record, we agree with Mansker Farms that the numbered paragraphs created condition precedents to the exercise of the option by the Board.

Having determined that the ability of the Board to exercise the option contract depended on the conditions outlined in the numbered paragraphs, we turn to the Board's contention that the disputed provision, Section (d) of Paragraph 5, is not ambiguous. The trial court determined that this section was ambiguous because it could be reasonably interpreted in two different ways. The trial court found no valid contract existed because the required meeting of the minds did not take place. After a *de novo* review of the entire record in this case, we reach the same conclusion that the trial court reached.

-4-

The formation of a contract "'must result from a meeting of the minds of the parties in mutual assent to the terms . . . .'" *Doe v. HCA Health Services of Tennessee, Inc., d/b/a HCA Donelson Hospital*, 46 S.W.3d 191, 196 (Tenn. 2001) (citations omitted). In the construction of a contract, the intention of the parties at the time the agreement is executed governs. *Planters Gin Company v. Federal Compress & Warehouse Company, Inc., et al*, 78 S.W.3d 885, 890 (Tenn. 2002). The parties are presumed to have expressed their intentions in the language of the agreement. *Id.* When this expression of intent is "clear and unambiguous, the literal meaning of the language controls the outcome." *Id.* Terms of the contract that "may be susceptible to more than one reasonable interpretation . . . render[] the terms of the contract ambiguous." *Id.* This court has similarly defined ambiguity as it relates to a contract provision as "doubt or uncertainty arising from the possibility of the same language being fairly understood in more ways than one." *Inscoe v. Kemper*, No. M1999-00741-COA-R3-CV, 2000 Tenn. App. LEXIS 736, at \*8 (Tenn. Ct. App. Nov. 6, 2000) (citing *Hillis v. Powers*, 875 S.W.2d 273, 276 (Tenn. Ct. App. 1993)). There is no "meeting of the minds" when a contract term is ambiguous, and thus no enforceable contract. *Id.* (citing *Jamestowne On Signal, Inc. v. First Federal Savings & Loan Ass'n*, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990) (further citations omitted)).

The testimony at trial detailed a series of negotiations between Mansker Farms and the Board. These negotiations took place over a period of several years and involved several different proposals for a school location on the Mansker Farms development. Witnesses for Mansker Farms testified that the negotiations that led to the agreement in dispute were brought about because of its need for zoning approval, and that they made clear that it was essentially a school-for-zoning deal. The Board's witnesses testified they were not aware of this condition. During the course of negotiations between the parties, Mr. McClung added the language in dispute to the end of Paragraph 5 (d) in his handwriting on a contract proposal sent to him by Ms. Dennen. This language was reviewed by the Board and was incorporated into the signed option contract. The Board's witnesses testified that they were unaware of Mr. McClung's interpretation of that language while witnesses for Mansker Farms testified that the Board was aware of the condition it was putting on the exercise of the option. This lack of a "meeting of the minds" on this provision where both sides were revising and adding language to the contract provision, each with their own interpretation, created an ambiguous provision.

We find that the language of section 5(d), specifically the parts reading "including the proposed site plan and rezoning as hereinabove recited" and "[s]chool system agrees to support and/or assist Seller with said change," to be capable of two different but reasonable interpretations. On the one hand, the Board's position that the zoning referred to was only that for the school and not for the entire Mansker Farms development is a reasonable interpretation. On the other hand, the word "rezoning" and the phrase "[s]chool system agrees to support and/or assist Seller with said change" can be reasonably interpreted as referring to the entire Mansker Farms property and the idea that Mansker Farms was conditioning its gift to the School on the "said change." Thus, as evidenced by the ambiguity of this provision, there was no "meeting of the minds" between Mansker Farms and the Board. As stated above, when there is no "meeting of the minds" there can be no enforceable contract. Thus, we affirm the judgment of the trial court.

## Conclusion

Because there is not a valid contract, all other issues are moot. We affirm the judgment of the trial court. Costs are taxed to the Appellant, Sumner County Board of Education, and its surety, for which execution may issue, if necessary.

_____
ALAN E. HIGHERS, JUDGE