SHERRILL et al v. ERWIN et al.—220 S. W. (2d) 878.

Eastern Section.   November 10, 1948.

Petition for Certiorari denied by Supreme Court, April 30, 1949.

664

Sabine & Karraker, Crossville, for appellants.

Tollett & Tollett, Crossville, for appellees.

HOWARD, J.  The original bill in this cause sought to reform a deed and prayed for injunctive relief to prohibit

waste upon and destruction to the real estate involved. Later complainants amended their bill and asked the Court to determine whether the surface land was damaged by wrongful excavations made by defendants stripping the land to remove the coal therefrom and for damages, if any, to the surface land.

The case was heard upon oral testimony and the Chancellor held that complainants' proof was insufficient to establish a mutual mistake in the execution of the deed; that considering complainants' testimony in its most favorable light it was not a suit in which the deed in question could be reformed; and that by plain language of the deed conveying the land to complainants, the grantor reserved the right to remove the coal by what is known as the stripping method.

On September 9, 1944, defendant, G. E. Harrison, sold and conveyed to complainants, Hulin Sherrill and wife, Bricie Sherrill, a 50 acre tract of land in which the grantor reserved the mineral rights—the deed containing the following provision:

"But this deed is for the surface and timber only, and all minerals and the right to remove same are reserved. There is reserved the right to enter upon said premises for the purpose of drilling or mining for any minerals in or under said land, and to remove same by pipe line or otherwise. The above is to include stripping privileges if it is thought advisable to remove the coal by that method."

On May 28, 1947, the said G. E. Harrison executed a lease covering 400 acres of land in which he owned the coal and mineral rights to defendants, Ben Donelson and R. H. Erwin, their heirs and assigns, for a period of twenty years, or until all the coal therein could be re-

moved. Included in the lease was the 50 acre tract of land sold complainants. After providing that the lessees shall pay Harrison twenty cents for each ton of coal removed and sold, the lease contains the following provision:

"(4) The lessor does not own the surface over the mineral and this lease is given subject to the surface rights of surface owners."

Subsequently on May 30, 1947, Donelson and Erwin subleased the 400 acre tract of land obtained from Harrison to their codefendant, B. R. Thompson, as Trustee, his heirs and assigns, who agreed to strip mine the merchantable coal and pay sublessors the sum of twenty-five cents per ton for each ton of coal removed and sold. This lease provides that it shall automatically be cancelled if certain conditions are not complied with by Thompson, and further provides as follows:

"(3) The parties of the first part do not own or have under lease the surface over the mineral and this lease is contingent upon second party's ability to acquire the surface and stripping rights over said minerals."

It has long been recognized in this State that the owner of coal and mineral land may, if he desires, convey the land in its entirety, or he may by a conveyance in writing sever the coal or minerals or his rights therein from the remainder of his estate and sell each separately from the other, as was done in the present case. Murray v. Allred, 100 Tenn. 100, 43 S.W. 355, 39 L.R.A. 249, 66 Am. St. Rep. 740; Northcut v. Church, 135 Tenn. 541, 188 S.W. 220, Ann. Cas. 1918B, 545.

Complainants insisted below that it was inadvertently omitted from the deed from Harrison to them "that at all times the removal of the coal from the earth was to

be so exercised as not to conflict with the rights of complainants and that if any such rights were subsequently exercised by grantees of said G. E. Harrison then in that event complainants would be duly compensated for such interference with their interests vested by the said deed'', and relied upon the previously quoted provisions found in the Harrison, Donelson and Erwin leases to support them in their insistence that their deed be reformed. Complainants testified that when they bought the land from Harrison, they knew that they acquired title only to the surface land and timber, and that Harrison retained title to the minerals and reserved the right to strip mine coal, but that they were told by him if their land was destroyed by the removal of the coal therefrom by the stripping method, they would be well paid in damages therefor.

Harrison admitted execution of the deed conveying to complainants the surface land and timber, but denied that it was ever a part of the agreement that complainants would be paid if their surface land should be destroyed in the event of the removal of the coal therefrom by the stripping method, and insisted that the deed fully set forth the contract between the parties and that there was no other or further agreement other than the one shown by the deed. His son, George Harrison, who prepared the deed, testified that the provision ''subject to the rights of the surface owners'' was inserted in the lease which his father gave Donelson and Erwin because his father did not have stripping rights to the entire 400 acres under which his father owned the mineral rights, and the exception was put in to cover the entire boundary; that when the 50 acre tract was sold to the Sherrills he and his father thought there might be

coal under the meadow-land, and that the Sherrill deed was one of the few deeds in which the privilege to strip mine coal was reserved.

The record discloses that mining coal by the stripping method destroys the surface land and its productivity. To get to the coal, which is only a few feet underground, the entire surface is removed and is dumped nearby on other land, which is also destroyed. The operation usually leaves a large excavation, depending upon the length, depth and width of the vein of coal.

The proof shows that about three acres of complainant's land have been destroyed; that the surface soil has been removed for a distance of 500 feet, leaving an excavation 75 feet wide and 30 feet deep; that the dirt from this excavation was dumped on one of complainants' meadows, destroying it for all purposes; that roads have been built across complainants' land over which the coal was hauled and over which have traveled large pieces of machinery, including a bulldozer, steam shovel, etc.; and that Bert L. Williams, agent of Thompson, has been in charge of the mining operations.

It is insisted here that defendants do not have the right to enter upon complainants' land and mine coal without paying compensation for the amount of surface land destroyed; that the deed from Harrison to complainants and the lease from Harrison to Donelson and Erwin, as well as the lease from Donelson and Erwin to Thompson, specifically limited the right of sublessee Thompson to mine coal by the stripping method or disturb the surface land of complainants; that Thompson's right to mine coal by any method depended upon acquiring permission of the surface owners; that defendants did not have the right to enter upon complainants' land

and mine coal without compensation for the amount of surface land destroyed.

■ We are unable to find any reported cases by our Appellate Courts dealing with the rights of persons engaged in mining coal by the stripping method, as this method seems to be of recent development in our State. However, we believe that the general proposition of law, as stated under the subject of Mines and Minerals in Volume 36, Am. Jur., Sec. 177, is applicable to the present case. Said section reads as follows:

"The right to minerals when separated by grant or reservation in a deed is as much an estate in lands as the right to the surface of the same lands, and unless the language of the conveyance by which the minerals are acquired repels such construction, the mineral estate carries with it the right to use so much of the surface as may be reasonably necessary to reach and remove the minerals. This is an application of the maxim that when anything is granted all of the means of obtaining it and all of the fruits and effects of it are also granted. The implied right to occupy so much of the surface as may be needed to open and work the mines is not limited, but rather strengthened, by a special grant of certain timber and water privileges and of a right of way to and from the mines. There are obvious degrees of necessity for the use of the surface in the conduct of subterranean mining operations, from the absolute necessity of sinking shafts or making other entrances to the minerals, to the practical necessities of business operations. The owner of the minerals obtains, either by express terms of the conveyance or by necessary implication therefrom, a right of entry or access to the minerals over and through the surface, and as against such purpose, the grantor does not hold the surface adversely."

■ Regarding the piling and dumping of waste in connection with mining operations, Sec. 179 of said Volume reads as follows:

"Although the owner of minerals in place may not, in the absence of some agreement to the contrary, use the surface as a dumping ground for materials or waste from mines on adjoining property, he may, as incidental to mining the coal or other minerals underlying the land itself, use an appropriate part of the surface thereof as a dump. For such purpose he is entitled to use only so much of the surface as is strictly and reasonably necessary."

In deciding that complainant had a right of way by implication over land of the owners of the surface to mine and remove minerals, our Supreme Court in Pearne v. Coal Creek Mining & Manufacturing Co., 90 Tenn. 619, at page 629, 18 S.W. 402, at page 404, said:

"The fact that the party who seeks the establishment of the way in this case owns only the minerals in the dominant estate does not change the rule. It gives him no higher or other rights than he would have if he owned both surface and minerals. By his deed he has an express grant of all mining privileges on and through the surface; and, if it were not so expressed in his deed, the grant of the minerals would carry with it, by implication, a right to the reasonable use and enjoyment of the surface for all necessary mining purposes."

■ We think that by the express terms of the deed, the owner of the minerals, his grantees and lessees have an implied right, or a right by implication, to a sufficient right of way over the land, and to the use of sufficient surface space as may be reasonable and necessary in connection with the stripping and removing of the coal;

and that the removal of the coal by the stripping method would be governed by the same rule of law applicable to quarrying and removal of marble, as in the case of Pickens v. Kizer, 11 Tenn. App. 551, where the deed reserved the ownership of marble, but was silent as to the right of ingress and egress and surface rights in general. This Court in that case held that the owner of the marble had an implied right to a sufficient right of way over the land and for the use of surface ground necessary for quarrying and removing the marble. On this question Judge Portrum in his opinion in 11 Tenn. App. at pages 555 and 556 said:

"The deeds severing the estate by reserving one-half of the marble interests below and above ground is silent on the method of operation as well as the right to ingress or egress and surface rights in general.

" It is the contention of the complainant that since he owns the surface, he is not handicapped in the enjoyment of his interest in the marble but his co-owners are because they have no legal right to use the overlaying surface in the removing of the marble.

"This contention is not well founded. There was by implication an implied reservation of sufficient right of way and ground surface for quarrying and removing of the marble in a reasonable way. (Northcut v. Church, 135 Tenn. 558 [188 S.W. 220, Ann. Cas. 1918B, 545].) This right cannot be defeated on the theory that the complainant is a subsequent purchaser of the surface right and was not required to take notice of implied and invisible easements resting upon the surface. He purchased the surface and one-half interest in the marble, with full knowledge of the interests on his cotenants in

the marble. His deed was not silent upon the severed estate and it raised the implied reservations.''

See also McBurney v. Glenmary Coal & Coke Co., 121 Tenn. 275, 118 S.W. 694.

■ There is no proof in the record that defendant Thompson was negligent in his operations while mining and removing the coal or that he used more of complainant's surface land than was necessary. On this question B. R. Rhodes, an engineer experienced in mining coal by the strip mining method, testified as follows (Record, pages 207 and 208:

''Q. Now on the line 'e', 'f', 'g', 'h' to 'i', where the spoil was distributed, I will ask you to state whether or not any more of the ground than was necessary to dump the spoil was used?

''Mr. Sabine: I except to that as a matter of opinion.

''The Court: I'll let him answer.

''A. They did not use any more land than was necessary because it cost more money to do it.

''Q. From what you observed of the work was any more land covered than was necessary, or did it cover just what it took to take care of the spoil? A. I would say just what was needed for the spoil.

''Q. You say you have been connected and have had experience in this mine stripping method, state whether or not from what you observed at this place this work had been done in a workmanlike manner? A. Yes, sir. I operated my own strip mine for about a year, and I think I would have operated it the same way this was done.''

■ Complainants insist that the provision in the Thompson lease with respect to the sublessee acquiring stripping rights and privileges from surface owners was

inserted in the lease for their benefit. This provision did not change or vary the terms of their deed, and it in no way impaired complainants' rights in the use and enjoyment of their land. It neither enlarged nor reduced the estate conveyed to them by their deed, nor is there any proof that said provision was intended for complainants' benefit. The law presumes that a contract is executed for the benefit of the parties thereto and not third persons, and a third person claiming benefits thereunder has the burden of proving that the contract was made for his benefit. No proof having been introduced to rebut this presumption, there is no merit in this assignment.

Finally, it is urged by complainants that they are entitled to recover damages from Thompson by reason of the destruction of their surface land upon a promise in the lease made for their benefit when Thompson obtained his lease from Donelson and Erwin. This claim based on said promise was not urged below and will not be considered here because same is not covered by proper allegations in the pleadings; besides, there is no proof on which a claim could be based under the prayer for general relief.

Inasmuch as appellants failed to assign error on the Chancellor's refusal to reform the deed, we have not considered this question.

For reasons indicated, all assignments of error are accordingly overruled, and the decree of the Chancellor will be affirmed at appellants' costs.