Oman Construction Company, Inc., McKenzie
Construction Company, and Bertrand
Goldberg Associates, Petitioners,

*v.*

Tennessee Central Railway Company, Respondent.

370 S. W. 2d 563.

(*Nashville,* December Term, 1962.)

Opinion filed September 11, 1963.

558

Stephenson, Lackey & Holman, Nashville, for Bertrand Goldberg Associates.

Joseph Martin, Jr., John D. Whalley and Carmack Cochran, Nashville, Martin & Cochran, Nashville, of counsel, for respondent.

Mr. Justice Holmes delivered the opinion of the Court.

This suit was instituted by the Tennessee Central Railway Company against the Oman Construction Company, Inc., McKenzie Construction Company and Bertrand Goldberg Associates to recover damages alleged to have been sustained by plaintiff as a result of the tunneling of a sewer under its freight depot in Nashville and blasting done in connection with the construction of such sewer. In the Circuit Court there was a judgment for the plaintiff for $30,000.00 against all of the defendants. The case was appealed to the Court of Appeals where a majority of that Court affirmed the Circuit Court judgment. This Court has granted writs of certiorari prayed for by all of the defendants and

has set the case for oral argument, which has been had. For convenience, hereinafter we shall refer to the defendand Oman Construction Company, Inc., as "Oman", the defendant McKenzie Construction Company as "McKenzie" and the defendant Bertrand Goldberg Associates as "Goldberg".

The plaintiff's declaration is in three counts. The first count is based on an alleged breach of contract by the defendants. The second and third counts sound in tort. The first count of plaintiff's declaration alleges that on August 18, 1952 Goldberg, a firm of architects-engineers, and another similar firm entered into a contract with the City of Nashville by which Goldberg and the other firm were employed by the City as engineers in connection with the construction of a sewage collection and disposal system for the City. Under the terms of this contract Goldberg and the other firm were employed to review and report on an existing design for such sewage system and to supervise and inspect the proposed construction work. This count of the declaration further alleges that on June 29, 1953 the contract of August 18, 1952 was amended so as to separate the work of Goldberg from that of the other firm. By this amendment Goldberg alone became the supervising engineer for the proposed sewer construction. It is alleged that, as supervising engineer under the terms of its contract with the City, Goldberg agreed as follows:

"I. The Engineers will establish a suitable Engineer-Management office in the City of Nashville and will employ and install therein a competent resident engineer and a staff of assistant engineers, survey personnel, inspectors, and such other personnel as may be

necessary, who will supervise and inspect the proposed construction work as the direct representative of the Engineers. Said resident engineer and the personnel under his direction, will devote full time and energies solely to the prosecution of the construction work until the same has been completed and accepted by the City.

\* \* \* \* \* \*

"V. Following award of construction contracts by the City, the Engineers will supervise all construction work thereunder.

"(a) Supervision of construction will consist of the following:

"(1) The inspection of all work in progress to insure its compliance with provisions of the construction contracts, including periodic visits to the site of the work to see that detailed inspection is adequate, that construction is according to plans and specifications, and that progress is satisfactory and according to schedule.

"(2) The preparation of any additional detail drawings that may be found necessary for proper construction or to cover any changes that may be encountered in field conditions.

"(3) The checking of all lines and grades as the work proceeds."

This count of the declaration further alleges that on May 20, 1954 the City and the plaintiff entered into an agreement by which plaintiff granted unto the City, "its, servants, agents and/or contractors permission to enter upon the property of plaintiff for the purpose of constructing an 84-inch pipe tunnel sewer across the plain-

tiff's station grounds and under the station and office building and tracks of plaintiff." This quoted language from the declaration is the conclusion of the pleader as to the terms of the contract between the plaintiff and the City, which contract, has hereinafter stated, was made a part of the record in the cause. The contract itself, after describing the size and location of the sewer across plaintiff's property and providing that the top of said sewer shall not be less than 13 feet below the surface states:

"TENNESSEE CENTRAL RAILWAY COMPANY hereby grant and give the required easement to the City of Nashville, its servants, agents and/or contractors to construct, operate and maintain said sewer across its lands along the routes above described.

\* \* \* \* \* \*

"All expenses in connection with the construction of said sewer, or damage to facilities of the Railway as a consequence of said construction or operation is to be borne by the City of Nashville, its servants, agents and/or contractors.

\* \* \* \* \* \*

"It is not intended by this instrument to give the City of Nashville any interest in or titles to the lands of Tennessee Central Railway, but the easement herein is given only for the construction, operation and maintenance of said sewers."

It is further alleged in this count that on June 29, 1954 the City entered into a contract with Oman for the construction of the sewer. This contract, among other things, provided:

## "CONTROL OF WORK AND MATERIALS

"1. Authority of the Engineer:

"All work shall be done under the supervision of the Engineer and to his satisfaction; he shall decide all questions which arise as to quality and acceptability of materials furnished, work performed, manner of performance, rate of progress of the work, sequence of construction, interpretation of plans and specifications, acceptable fulfillment of the contract, compensation and suspension of work; he shall determine the amount and quality of work performed and materials furnished; subject in each case, however, to the final determination of the City.

"The contractor may request and shall receive written instructions from the Engineer upon any important items."

### P. 13

## "LEGAL RELATIONS AND RESPONSIBILITY TO PUBLIC

\* \* \* \* \* \*

"9. Protection and Restoration of Property:

"The Contractor shall not enter upon private property for any purpose without first obtaining permission of the property owner and the Director of Public Works, by application through the Engineer, and he shall be responsible for the preservation of and shall use every precaution necessary to prevent damage to all trees, shrubbery, fences, culverts, bridges, pavement, driveways, sidewalks, etc.; to all water, sewer, gas, telephone and electric lines thereof, and to all

other public or private property along or adjacent to the work. The Contractor shall notify the proper representatives of any public service corporation, any company or any individual not less than twenty-four (24) hours in advance of any work which might damage or interfere with the operation of their or his property, along or adjacent to the work. He shall be responsible for all damage or injury to property of any character resulting from any act, omission, neglect or misconduct in the manner or method of executing the work or due to his non-execution of the work or at any time due to defective work or materials, and said responsibility shall not be released until the work shall have been completed and accepted.

"When and where any direct or indirect damage or injury is done to public or private property on account of any act, omission, neglect or misconduct in the execution of the work or in consequence of the non-execution thereof on the part of the Contractor, he shall restore, at his expense, such property to a condition similar or equal to that existing before such damage or injury was done by repairing, rebuilding or otherwise restoring as may be directed, or he shall make good such damage or injury in an acceptable manner."

P. 19

\* \* \* \* \* \*

## "PROSECUTION AND PROGRESS

"1. Sub-Letting of Work:

"If the Contractor sublets the whole or any part of the work to be done under this contract, he will

not, under any circumstances be relieved of his responsibility and obligation hereinbefore set out. All transactions of the City and/or Engineer shall be with the Contractor. Sub-contractors will be considered only in the capacity of employees or workmen and shall be subject to the same requirements as to character and competency.''

P. 22

\*   \*   \*   \*   \*   \*

"CONTRACT

\*   \*   \*   \*   \*   \*

"Article VIII. The blasting of rock in the progress of the work shall be at the risk of the Contractor—, and all damages occasioned thereby, or any injury done by the Contractor—, or any of his employees, to persons or to personal or real property, also all damages that may be occasioned to omission on the part of the said Contractor— or his employees, resulting from the carrying out of said work, shall be paid by the Contractor— and the City of Nashville shall be saved wholly harmless therefrom by the Contractor— and in the event of a joint judgment by any court against said Contractor— and the City of Nashville, or in the event of a joint liability with or without suit, it is expressly agreed that said Contractor— shall not claim or set up, or plead as a defense that —he— and the bond covering this work are not liable.''

\*   \*   \*   \*   \*   \*

"TECHNICAL PROVISIONS

\*   \*   \*   \*   \*   \*

"7. Sheeting, Shoring and Bracing

"(b) Where excavations are made adjacent to existing buildings or other structures or in paved streets,

alleys or other improved areas, the Contractor shall take particular care to sheet, shore and brace the sides of the excavation adequately so as to prevent any undermining of or settlement beneath such structures or pavement. Underpinning of adjacent structures shall be done, when necessary, with the approval of the Engineer.''

\* \* \* \* \* \*

## ''SEWERS IN TUNNELS

\* \* \* \* \* \*

''6. Care of Existing Structures and Property

''(a) All poles, trees, shrubbery, fences, pavements, sewer, water, gas or other pipes, wires conduits and manholes, tunnels, tunnel shafts, buildings and all structures and property along the route of the sewer shall be supported and protected from injury by the Contractor during the construction, and until the completion of the sewer and appurtenances. The Contractor shall be liable for all damages to such structures and property, and shall save and keep the City harmless from any liability or expense for injuries, damages or repairs to the same.

\* \* \* \* \* \*

''16. Sheeting, Bracing and Lining:

''(a) The Contractor shall furnish, place and maintain all sheeting, bracing and lining required to support the sides, floor and headings of the excavation in tunnel. If the sewer should be constructed under compressed air, only steel plates and steel shapes shall be used in all tunnels and shafts for supporting the surrounding earth. Bracing in place supporting the earth shall not be removed execpt by permission of the Engineer. Drawings showing the method and sizes

of lining and bracing proposed to be used shall be furnished for the information of the City and the Engineer before the necessary materials or equipment are ordered by the Contractor. Special care shall be exercised to insure that full bearing is obtained between the lining and sheeting and the earth. Suggested methods of bracing and lining excavations are shown in the plans, however, the responsibility for adequacy of all such work shall be solely with the Contractor.

"(b) If at any time the method being used by the Contractor for supporting any material or structure in or adjacent to any excavation is not reasonable safe, in the opinion of the Engineer, the Engineer may require and the Contractor shall provide additional bracing and support necessary to furnish the added degree of safety required by the Engineer. The Contractor shall provide such added bracing and support by such method approved by the Engineer as he may elect to use, but the taking of such added precaution shall in no wise relieve the Contractor of his sole and final responsibility for the safety of workmen, work and structures."

It is next alleged that Oman sub-contracted the entire work to McKenzie, who undertook to construct the sewer. The defendants Oman and McKenzie do not contend that there is any difference in their status in this case.

In count one of the declaration it is further alleged that all of the defendants breached the foregoing contracts, that the building and platforms and tracks of plaintiff were caused to sink and were damaged as a result of such breach of contract, that this damage comes within the provisions of the contract of May 20, 1954

between the City and the plaintiff, the obligations of which were assumed by Oman and McKenzie and that it is also within the provisions of the contract between Oman and the City. Plaintiff further alleges Goldberg was bound by the terms of the contract between the City and plaintiff, that the damage was done by Oman and McKenzie under the supervision of Goldberg and that Goldberg breached his own contract by permitting the breach of contract by Oman and McKenzie.

The second count of the declaration is in tort and is based upon alleged acts of negligence. It charges Oman and McKenzie with a number of specific acts of negligence and alleges that Goldberg was negligent in the supervision of the work by allowing and approving the negligent and careless acts of the contractors, Oman and McKenzie.

The third count of the declaration is also in tort and alleges negligence generally in that all of the defendants jointly came upon the plaintiff's property and negligently damaged its buildings and other improvements by tunneling under same and removing pilings and by blasting.

The defendants craved oyer of all the contracts sued on. An order was entered making relevant parts of the contract between Oman and the City as well as all of the other contracts above referred to a part of the record in the cause.

After these contracts were made a part of the record, Goldberg filed a demurrer, the first ground of which was that the declaration and the contracts in the record do not show that Goldberg ever promised to pay plaintiff

for any damages it might suffer nor do they show that Goldberg was in any way contractually liable to the plaintiff. Other relevant grounds of this demurrer went to the second and third counts of the declaration, the basis of these grounds of demurrer being that since Goldberg was not contractually liable to the plaintiff there was a misjoinder of parties defendant since all of the causes of action stated in the declaration do not affect all of the parties defendant.

The defendants Oman and McKenzie also demurred to the declaration. The grounds of the demurrer of these defendants are:

"The defendants demur to the First Count because the same is not based upon one contract whereunder the several defendants are jointly liable, but is based upon many separate alleged contracts of the several defendants.

"The defendants demur to the second and third counts of the declaration because they are sued therein both in tort and upon contract."

Both the demurrer of Goldberg and that of Oman and McKenzie were overruled in their entirety by the Trial Judge. This action of the Court was assigned as error in the Court of Appeals and the action of the Court of Appeals in affirming the Trial Court in this regard is made the basis of Goldberg's assignments of error Numbers 1, 2 and 3 in this Court and assignments of error Numbers 1 and 2 of Oman and McKenzie.

█ In considering these assignments, it is necessary first to consider the extent to which the averments of a declaration are admitted by a demurrer. In Tennessee

"it is fundamental that a demurrer admits only facts that are well pleaded and reasonable inferences of fact but not deductions, inferences and conclusions of law." *In re Eppinger's Estate,* 207 Tenn. 53, 57, 336 S.W.2d 28, 30.

" 'Averments in a declaration as to the meaning and interpretation of a writing attached thereto, or exhibited, are not admitted.by a demurrer. * * *

" 'Neither does a demurrer admit matters averred in the declaration contrary to law.' " *Crockett v. Mc-Lanahan,* 129 Tenn. 517, 525, 72 S.W. 950, 952, 61 L.R.A. 914.

The above quoted rules as to the extent to which the allegations of the declaration are admitted by demurrer have been applied in numerous other cases decided by this Court, including *Hackney Company v. Robert E. Lee Hotel,* 156 Tenn. 243, 252, 300 S. W. 1; *Freeman v. Dayton Scale Company,* 159 Tenn. 413, 418, 419, 19 S.W. 2d 255; *Zager v. Cobb,* 192 Tenn. 79, 83, 237 S.W.2d 560.

■ In applying these rules to the declaration in this case, it appears that the allegations of the declaration as to the meaning and interpretation of the written contracts sued on are not admitted by the demurrer. The legal effect of these instruments presents a question of law for the Court. *Godson v. MacFadden,* 162 Tenn. 528, 531, 39 S.W.2d 287.

In stating the substance of count one of the declaration, we have quoted all of the provisions of the contracts which are relied upon by the respective parties in their briefs. The undertaking of Goldberg in its contract with the City is primarily to see that the City

gets a sewer and disposal plant that measures up to that for which the City contracted. Goldberg did not agree to pay any damage to anyone nor did it contract to save the City harmless from any claim. In none of the contracts are such obligations expressly placed upon Goldberg.

On the other hand, Oman in its contract with the City expressly contracted to restore at its expense all damage or injury to public or private property on account of any act, omission, neglect or misconduct in the execution of the work or in consequence of the non-execution thereof by the contractor; or to make good such injury or damage in an acceptable manner. Oman also expressly contracted to save and keep the City harmless from any liability or expense for injuries, damages or repairs to any existing structures and property. Also Oman agreed in its contract with the City to save the City harmless from any damages resulting from blasting in the progress of the work. The "sole and final responsibility for the safety of workmen, work and structures" is expressly placed upon Oman and is assumed by that defendant in its contract with the City.

Had it been the intention of the parties that Goldberg be contractually liable to the plaintiff or others, it would have been a simple matter to have included in Goldberg's contract the same clear and unambiguous provisions for assumption of liability that were contained in Oman's contract with the City, or at least to have expressly placed such responsibility on Goldberg in one of the other contracts.

On May 20, 1954 the City in the easement contract with the plaintiff agreed that all damages to facilities of plain-

tiff as a consequence of the construction of the sewer would be borne by the City, its servants, agents and/or contractors. A little over a month after the execution of that contract the City entered into the contract with Oman by which Oman agreed to be responsible for all damages arising out of the work and agreed to indemnify and save the City harmless from such damages and to be *solely* responsible for the safety of structures in or adjacent to any excavation.

In the majority opinion of the Court of Appeals holding that the first count of the declaration stated a cause of action in contract against Goldberg, it is stated:

"We have heretofore pointed out the declaration charges Goldberg entered into a contract with the City to supervise and inspect the construction of the sewer system; that Goldberg assumed these duties under the construction contract between Oman and the City; that Goldberg breached its contract which resulted in damages to plaintiff; that Goldberg accepted the benefits of the contract between the City and Tennessee Central and thereby became liable to plaintiff as an agent of the City for any damage to plaintiff's property due to the breach of its contract to properly supervise the construction work. We think these pleaded facts state a cause of action in contract against Goldberg."

We are unable to agree with this conclusion of the Court of Appeals. The averments of the declaration on which this holding is based are averments of legal conclusions drawn by the pleader from the provisions of unambiguous contracts. We have heretofore pointed out that a demurrer does not admit conclusions of law. The

proper interpretation of the contracts is a question of law to be determined by the Court. We find no provisions in Goldberg's contract with the City or in the contract between Oman and City or in the contract between the plaintiff and the City which expressly provide for any contractual liability on the part of Goldberg to the plaintiff. The City saw fit to place solely on Oman the responsibilities undertaken by it in its contract with plaintiff.

The easement contract between the plaintiff and the City does not in any way specify what "servants, agents and/or contractors" in addition to the City are to bear the expense of damage to plaintiff's facilities as a consequence of the construction or operation of the sewer across its premises. If it were intended by the language used to bind every servant, agent and contractor of the City, there would have been no occasion to use the phrase "and/or contractors". It is necessary to examine all of the contracts to determine what are the rights and obligations of the respective parties to this litigation. The rule that several contracts relating to one transaction are to be construed together is stated in 17 C.J.S. Contracts sec. 298, pages 714, 715, in the following language:

"As a general rule, sometimes by reason of express statutory provision, where several instruments are made as part of one transaction, they will be read together, and each will be construed with reference to the other. This is true, although the instruments do not in terms refer to each other. So if two or more agreements are executed at different times as parts of the same transaction they will be taken and construed together."

574

■ Our Court of Appeals in *Real Estate Management v. Giles,* 41 Tenn.App. 347, 293 S.W.2d 596, 599, recognized and applied this rule in stating:

"Generally, in construing contracts the Courts not only look to the language of the instrument, but must ascertain, if possible, the intention of the parties, and the construction which is fair and reasonable will prevail. (Citing cases) And where several instruments are made as part of one transaction, they will be read together and each will be construed with reference to the other. *Great American Indemnity Co. v. Utility Contractors, Inc.,* 21 Tenn.App. 463, 111 S.W.2d 901."

Construing the contracts relied upon in conformity with the above stated rule, it is seen that in the City's contract with Goldberg every obligation undertaken by the engineer is for the benefit of the City alone. An examination of the contract between Oman and the City shows that in such contract Oman alone assumed the obligations to pay damages and restore damaged property. In Oman's contract under the general heading "LEGAL RELATIONS AND RESPONSIBILITY TO PUBLIC", subheading (9) "Protection and Restoration of Property", the only duty placed upon the engineer is to forward the contractor's application to enter upon private property to the property owner and to the Director of Public Works of the City. It is in these same paragraphs dealing with legal relations and responsibility to public that Oman expressly agrees to be responsible for "all damage or injury to property of any character resulting from any act, omission, neglect or misconduct in the manner or method of executing the work or due to his non-execution of the work or at any time due to defective work or materials".

In these same paragraphs Oman further agrees to make good all damage to public or private property occasioned by any act, omission, neglect or misconduct in the execution of the work or in consequence of the non-execution thereof on the part of the contractor. It thus appears that in the Oman contract under the title "LEGAL RELATIONS AND RESPONSIBILITY TO PUBLIC" no duties or obligations with respect to any damage to any property are placed upon Goldberg.

Under the general heading "SEWERS IN TUNNELS" in Oman's contract, sub-heading (6) "Care of Existing Structures and Property", paragraph (a) Oman alone assumes responsibility to support and protect all structures from injury during the construction "and to be liable for all damages to such structures and property" and to save the City harmless from any liability for damage to same. The Engineer is not so much as mentioned in this paragraph. Under this same general heading "SEWERS IN TUNNELS", sub-heading (16) "Sheeting Bracing and Lining", paragraph (b), the contract between Oman and the City provides:

"If at any time the method being used by the contractor for *supporting any* material or *structure in or adjacent to any excavation* is not reasonably safe, in the opinion of the engineer, the *engineer may require* and the *contractor shall provide* additional bracing and support necessary to furnish the added degree of safety required by the engineer. The contractor shall provide such added bracing and support by such method approved by the engineer as he may elect to use, but the taking of *such added precaution shall in no wise relieve the contractor of his sole and final responsibility for*

*the safety of* workmen, work and *structures."* (Emphasis supplied)

█ It thus clearly appears that all obligations to pay damages or to indemnify the City or restore damaged property are made the obligation of Oman alone and no such obligations are placed upon Goldberg in the contract between Oman and the City.

█ It is contended that Goldberg accepted the benefits of the contract between the City and plaintiff and thereby became liable in contract to plaintiff. We have heretofore pointed out that this easement contract does not provide what "servants, agents and/or contractors" are to be responsible for damages to plaintiff's property.

In construing a statute containing the expression "and/or" this Court stated, "The expression 'and/or' in this statute must be held to include the meaning to be ascribed if 'or' was used alone." *Hood v. State,* 187 Tenn. 501, 505, 216 S.W.2d 14, 16.

█ It is generally held that when the expression "and/or" is used in contracts its interpretation depends upon the circumstances and it must be construed to express the intention of the parties. *Newlon v. Newlon,* 310 Ky. 737, 220, S.W.2d 961, 963. See also cases collected in 3 Words and Phrases, Permanent Edition, p. 640 et seq.

Webster's New International Dictionary, 1949 Edition, defines "and/or" as meaning either "and" or "or".

In construing all of the contracts together, it is clear that the City placed the legal responsibility for all damages to property on Oman alone in the contract between Oman and the City which was executed shortly after the execution of the contract between the City and plain-

tiff. When the contract between the plaintiff and the City is properly construed, Goldberg is in no sense a party thereto. None of the contracts makes the plaintiff a third party beneficiary of any obligation assumed by Goldberg. In determining whether or not one was a third party beneficiary of a contract, it was stated in *Rutherford County v. City of Murfreesboro*, 202 Tenn. 455, 459, 460, 304 S.W.2d 635, 637.

"The question whether this contract was intended for the benefit of the county, a third party, is one of construction and depends upon the intention of the parties to the contract. 12 Am.Jur., Contracts, section 280. The law presumes that a contract is executed for the benefit of the parties thereto and not third persons, and a third person claiming benefits thereunder has the burden of proving that the contract was made for his benefit, *Sherrill v. Erwin*, 31 Tenn.App. 663, 220 S.W.2d 878. The court must be guided by these principles in determining whether the county is entitled to the benefit claimed under the contract. The contract nowhere expressly says that the county is to receive any benefits threunder. The contract nowhere expressly obligates the city to pay over to the county the county tax equivalent taken from the electric department revenues. It must then be determined whether the language of the contract by implication grants such benefit to the county."

The rule for determining the parties to a contract is stated in 17 C.J.S. Contracts sec. 346, pages 802, 803, in the following language:

"The question as to who are the parties to a contract must be decided on a consideration of the particular

case, and must, where not clear on the face of the writing, be determined as a question of intent under the general rules of construction already considered. In the case of an unambiguous written contract, the intention as to who shall be liable is to be gathered from the language of the contract itself as a matter of legal construction. A person is not made a party to a contract merely by being named or described in such contract, nor merely by the fact that such contract is referred to in a writing which evidences another contract to which such person is a party.''

When these rules are applied to the contracts upon which count one of the plaintiff's declaration is based, it is our opinion that neither by express language nor by implication is the plaintiff contractually the beneficiary of any obligation undertaken by Goldberg. The fact that Goldberg is charged with knowledge of the easement contract between the plaintiff and the City does not bind him in contract to pay damages to the plaintiff. It was also charged with knowledge of the terms of the contract between Oman and the City which expressly bound Oman alone to pay such damages. Goldberg's knowledge of the easement contract would not create liability under same where none existed.

It is further contended by the plaintiff that since the contracts are with a municipality they are public contracts and that the first count of the declaration states a cause of action against Goldberg by reason of the rule stated in Paragraph (b) of Restatement, Contracts, Sec. 145, which is as follows:

''A promisor bound to the United States or to a State or municipality by contract to do an act or render a

service to some or all the members of the public, is subject to no duty under the contract to such members to give compensation for the injurious consequences of performing or attempting to perform it, or of failing to do so, unless.

"(a) an intention is manifested in the contract, as interpreted in the light of the circumstances surrounding its formation, that the promisor shall compensate members of the public for such injurious consequences, or

"(b) the promisor's contract is with a municipality to render services the non-performance of which would subject the municipality to a duty to pay damages to those injured thereby.

\* \* \* \* \* \*

"Illustration of Clause (b):

"5. A, a municipality owes a duty to the public to keep its streets in repair. B, a street railway company, contracts to keep a portion of these streets in repair but fails to do so. C, a member of the public is injured thereby. He may bring actions against A and B and recover judgment against each of them."

In the brief filed in support of Goldberg's petition for certiorari, it is stated:

"In the application of the restatement principles, the cases show that the only situations that have been held to fall under exception (b) are the Street Railway cases, wherein either through contract, franchise, or ordinance, a continuing duty was imposed upon a Street Railway Company to maintain in good repair

certain portions of streets. The cases show that the principle is applicable only where a municipality has a continuing duty of maintenance, such as in the case of streets or sidewalks, for the failure of which the City would be liable to individuals, and the City has transferred such continuing duty of maintenance to some one else by contract, franchise, or ordinance."

In this brief, counsel for Goldberg has also made an excellent analysis of the cases supporting the text in 2 Williston on Contracts (3rd Ed. 1959) Sec. 374, dealing with this same subject. After examining the texts and the cases cited therein, we are convinced that Goldberg's contention as to the proper application of Paragraph (b) of Section 145, Restatement, Contracts, is correct. We have been unable to find cases holding contrary to those analyzed in Goldberg's brief and evidently counsel for plaintiff has found none, for no such cases are cited in the reply brief of plaintiff.

If the rule of Paragraph (b) of the above quoted section stated in Paragraph (b). For the reasons above stated, we sustain Goldberg's assignment of error number one and hold that the first court of the declaration does not state a cause of action in contract against Goldberg.

We hold that in this case the general rule quoted above from Restatement applies to Goldberg and not the exception stated in Paragraph (b). For the reasons above stated, we sustain Goldberg's assignment of error number one and hold that the first count of the declaration does not state a cause of action in contract against Goldberg.

The second assignment of error relied upon by this

defendant is based upon the Court of Appeals' failure to sustain the following ground of Goldberg's demurrer:

"Said Defendants demur to the Second and Third Counts because they are sued therein in tort, and said Counts are improperly joined with the First Count wherein other Defendants are sued in contract, the demurring Defendants not being proper parties to such contract count."

In support of this assignment this defendant relies upon *Teas v. Luff-Bowen Co.,* 147 Tenn. 651, 251 S.W. 44, and *Smith v. Archer,* 197 Tenn. 101, 270 S.W.2d 375, as well as general texts. Each of these cases deals with a misjoinder of parties plaintiff. *Smith v. Archer* quotes with approval the holding in the Teas case that:

" 'To authorize a joinder of causes of action in tort, it is necessary that they each affect all the plaintiffs; hence a joint claim cannot be united with a single one, nor when the same tort affects the several rights of different persons can their cause of action be joined.' "

The authorities seem to be uniform in holding that the rule applied to the joinder of parties plaintiff in these cases is equally applicable to parties defendant. The rule is stated as follows in 1 C.J.S. Action sec. 98a, page 1284:

"In order to authorize a joinder of causes of action involving different parties defendant, it is necessary that each of such causes shall affect all of the defendants".

In 1 Am.Jur.2d, Actions, Sec. 123, Page 643, it is stated:

"As a general rule under the modern practice, it is a prerequisite to the joinder of different causes of ac-

tion in a single pleading that all the causes should affect all parties to the action, both parties defendant and parties plaintiff.''

In this same Section, at Page 644, this text further states:

''The rule requiring that the several causes of action joined in one complaint or petition affect all parties to the action is applicable whether the several causes of action are causes ex contractu or causes ex delicto, or are partly ex contractu and partly ex delicto.''

■ We have been cited to no cases contrary to the two Tennessee cases or the above quoted texts relating to joinder of parties and our investigation has revealed none. We, therefore, sustain Goldberg's second assignment of error and hold that this defendant's demurrer should have been sustained as to all counts of the declaration. This leaves for decision the questions raised by the assignments of error of Oman and McKenzie.

■ As heretofore stated, assignments of error one and two of these defendants relate to the action of the Court of Appeals in affirming the Trial Court in overruling the two grounds of demurrer of Oman and McKenzie hereinabove set forth. What has been stated with reference to the obligations undertaken by these defendants in the contract between Oman and the City clearly shows that these defendants come within the rule of Paragraph (a) of Sec. 145, Restatement, Contracts. The plaintiff is a third party beneficiary of Oman's contract with the City and count one of the declaration states a cause of action against these defendants in contract.

The fact that Goldberg was improperly joined is not a ground for dismissal of a suit as to those properly joined. *Payne v. Berry,* 3 Tenn.Ch. 154. 67 C.J.S. Parties

sec. 138, p. 1141, and sec. 140, p. 1146; 39 Am. Jur. Parties, Sec. 120.

By the second ground of the demurrer of these defendants heretofore quoted, it is contended that in the second count of the declaration these defendants are sued in both tort and upon contract in the same count. This count of the declaration simply incorporates by reference the "averments of the first count showing the status and relationship of the parties" and then alleges five specific acts of negligence on the part of Oman and McKenzie and alleges that, as a result of this negligence, the plaintiff sustained certain described damage.

There can be no doubt but that the gravamen of the action stated in count two sounds in tort. The existence of a contract may furnish the occasion for a tort obligation. In this case we have determined, as did the Court in *Carne v. Maryland Casualty Company*, 208 Tenn. 403, 408, 346 S.W.2d 259, 262:

"that the cause of action herein was not based on contract, but purely an ex delicto cause even though the relationship of the parties out of which the tort was committed grew out of contract."

See also Prosser on Torts (2nd Edition) Sec. 81.

The same applies to the third count of the declaration. We, therefore, overrule assignments of error one and two of these defendants.

The third assignment of these defendants complains of the action of the Court of Appeals in affirming the Trial Court in overruling Oman and McKenzie's motion for a directed verdict. This motion was grounded upon

the contention that these defendants were not liable in contract and that their negligence was not proven.

■■■ We have already held that the contract count stated a cause of action against these defendants. An examination of the record shows that there was ample proof introduced at the trial to make an issue for the jury as to negligence on the part of Oman and McKenzie in constructing the tunnel beneath plaintiff's property. Therefore, this assignment of error is overruled.

The fourth assignment of these defendants is based upon the affirmance by the Court of Appeals of the Trial Court's action in refusing to charge a special request containing the language that the ''contractual agreements of the Oman Construction Company with the City of Nashville are wholly immaterial on the question of the liability of these defendants in this action.''

What has been heretofore stated shows that we must overrule this assignment of error. We have pointed out that the obligations undertaken by Oman in its contract were for the benefit of those in the position of the plaintiff in this case.

The fifth assignment of Oman and McKenzie is that the Court of Appeals erred in failing to hold the Trial Court committed reversible error in charging the jury as follows:

''I further charge you, ladies and gentlemen of the jury, that those who use dynamite do so at their own peril and risk, and if a charge of dynamite is set off and it directly and proximately causes damage to property, the party is liable for the damages so resulting.''

By this assignment of error Oman and McKenzie con-

tend that the rule of strict liability for damages caused by blasting "is inapplicable to a contract with a municipality for a public improvement." In support of this contention, these defendants rely upon *Wood v. Foster & Creighton Company,* 191 Tenn. 478, 483, 235 S.W.2d 1, 3, and the cases cited therein as authority for the statement:

"that contractor constructing a public improvement for a public authority is not liable to a private property owner for the resulting damage where the contractor acts in accordance with the public authority's orders and is not itself guilty of negligence in the manner in which it does the work."

All of these cases deal with the rule that all damages necessarily incident to the proper construction of a public improvement must be recovered in a condemnation case and cannot be recovered in an action against the contractor. In none of these cases was there an express agreement upon the part of the contractor that blasting shall be at the contractor's risk and that all damages occasioned thereby shall be paid by the contractor, as is true in this case. Here the City expressly agreed to bear all damage to plaintiff's facilities and, as we have heretofore pointed out, Oman expressly assumed such responsibility and agreed to save the City wholly harmless.

In *Knoxville v. Peebles,* 19 Tenn. App. 340, 87 S.W.2d 1022, with certiorari denied by this Court, it was held that an instruction to the jury applying the rule of strict liability for blasting in a suit against the City and its contractor for damage sustained as a result of blasting in constructing a sewer was correct. We find no

error in the instruction complained of by this assignment under the uncontroverted facts of this case.

Assignments of error six and seven of these defendants relate to the admission of certain testimony given by the witness Bertrand Goldberg over the objection of these defendants. This testimony related to the understanding of the witness as to the duties of his firm under its contract with the City. We have examined this testimony and agree with the Court of Appeals that the error, if any, in admitting the testimony complained of was harmless error and not ground for reversal under T.C.A. 27-117.

The eighth and last assignment of Oman and McKenzie relates to the Trial Court's charge to the jury as to the measure of damages. The Trial Court took the part of the charge complained of from the contract between Oman and the City. These defendants contend that this was error because they should not have been put to trial on the contract count and the charge did not correctly state the measure of damages in tort.

We have already ruled that the plaintiff made out a case for the jury both in contract and in tort. The bill of exceptions does not show that any special request relating to the measure of damages was tendered, nor is there any claim that the verdict was in any way excessive. In the absence of a request for additional instructions on the measure of damages, these defendants are not in a position to complain when the Court used the very language of their contract to state the measure of damages. Also ,there is no showing that they were prejudiced by the action of the Court in so charging the jury. Therefore, this assignment of error is overruled.

It results that the action of the Court of Appeals in affirming the judgment of the Trial Court as to the defendant Goldberg is reversed and the cause is dismissed as to that defendant. In all other respects, the decree of the Court of Appeals is affirmed.