# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs March 17, 2003 Session

# 21st MORTGAGE CORP. , formerly 21ˢᵗ CENTURY MORTGAGE CORP. v. CAPITOL HOMES, LLC, ET AL.

**Appeal from the Chancery Court for Washington County**
**No. 7606     G. Richard Johnson, Chancellor**

**FILED APRIL 22, 2003**

**No. E2002-02670-COA-R3-CV**

Ms. Stella Ford ("Ford") purchased a manufactured home from Capitol Homes, LLC ("Capitol Homes") and contractually agreed to make monthly payments. At the same time, Capitol Homes assigned its rights under the contract with Ford to 21ˢᵗ Mortgage Corp. ("Plaintiff") through an Assignment by Seller ("Assignment"). Capitol Homes made twelve express warranties in the Assignment. The Assignment further provided it would be with limited recourse for two months. After the two months expired, Plaintiff sued Capitol Homes and James Hurst ("Hurst")(collectively referred to as "Defendants"). Hurst had personally guaranteed the debt of Capitol Homes. Plaintiff alleged, among other things, that Capitol Homes had breached several of the express warranties. Defendants filed a motion to dismiss claiming the two month limited recourse provision also applied to any claim for breach of express warranty. The Trial Court agreed, and dismissed the lawsuit. Plaintiff appeals, and we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Anthony R. Steele, Knoxville, Tennessee, for the Appellant 21st Mortgage Corp., formerly 21ˢᵗ Century Mortgage Corp.

Gary L. Edwards, Johnson City, Tennessee, for the Appellee Capitol Homes, LLC.

# OPINION

## Background

Plaintiff filed this lawsuit in August of 2001, alleging breach of warranties. Plaintiff is in the business of "making, buying, selling, and, among other things, servicing lending transactions…." According to the complaint, Capitol Homes entered into a Retail Installment Contract-Security Agreement ("Agreement") with Ford on November 22, 2000, when Ford purchased a manufactured home. At the same time the Agreement was entered into, Capitol Homes entered into the Assignment and assigned its rights under the Agreement to Plaintiff. In the Assignment, Capitol Homes made twelve express warranties to Plaintiff and agreed to repurchase the Agreement, on demand by Plaintiff, if any of these warranties were "untrue." Plaintiff claims it later learned that Ford did not purchase the home for herself, but instead purchased it for her son because he was otherwise unable to purchase the home due to his credit history, lack of employment or the like. Plaintiff claimed several of the express warranties made by Capitol Homes in the Assignment were breached because Ford purchased the home under these circumstances. Accordingly, Plaintiff made demand upon Capitol Homes to repurchase the Agreement, but Capitol Homes refused.

In addition to the Agreement and Assignment referenced above, Plaintiff claims Hurst also entered into a Personal Guaranty guaranteeing the regular, punctual payment and prompt performance of all debts of Capitol Homes. Plaintiff, therefore, sued Hurst individually. In the complaint, Plaintiff sought a judgment against both Capitol Homes and Hurst for the outstanding balance on that account of $24,823.27, plus interest, attorney fees, and costs per the terms of the Assignment.

The Assignment entered into between Plaintiff and Capitol Homes provides as follows:

## ASSIGNMENT BY SELLER

To 21st CENTURY HOME MORTGAGE CORP. (21 Century):
For value received, we hereby assign within contract and all our right, title and interest in it to 21st Century Home Mortgage Corp. (Assignee), and warrant all of the following: 1) that this contract is the result of a sale of our own property or services; 2) that we have full and perfect title to and right to convey this contract free of any encumbrance, lien, or any interest of third parties of any nature whatsoever; 3) that this contract accurately and correctly reflects a genuine, bona fide sale and the price and terms thereof, and is valid and in compliance with any applicable installment sales law or other applicable state or federal law or administrative regulation; 4) that at the time this contract is sold to the Assignee, the goods and services

-2-

are in the possession of the buyer, have been unconditionally accepted by the buyer, and are the identical goods and services described in the contract; 5) that the amount due from the buyer is not disputed or subject to any set-off, deduction, credit or counterclaim; 6) that the down payment is correctly stated in the contract; 7) that no part of the down-payment was loaned by us, directly or indirectly, to the Buyers; 8) that this contract is the entire and sole contract between us and the buyer as to the sale of goods or services evidenced herein; 9) that there is no undisclosed agreement, concession or litigation of any nature affecting this contract; 10) that all the parties to this contract were competent at the time it was executed; 11) that there are no valid defenses in law or equity to this contract as it exists in the hands of the Assignee after this conveyance; and 12) that all signatures on this contract are genuine. If any of the foregoing warranties are untrue, regardless of Assignee's knowledge or lack of knowledge or reliance thereon, Assignor hereby unconditionally agrees to repurchase the documents on demand from Assignee for the balance remaining unpaid plus any expense of collection, repossession, foreclosure, transportation, storage, attorney fees, and court costs incurred by Assignee less any customary refund by Assignee of unearned finance charges. FURTHER, if a "With Recourse" assignment is initialed below, we engage that the within contract will be paid according to its tenor, and that if it is not, we shall pay it to the Assignee or to any subsequent assignee, regardless of the order in which the assignments are made. If a "With Limited Recourse" assignment is initialed below, we engage that the within contract will be paid according to is tenor for the period shown below; and that if it is not, we shall pay it to the Assignee or to any subsequent assignee, regardless of the order in which the assignments are made. If a "Without Recourse" assignment is initialed below, this Assignment is without recourse.

Capitol Homes, through its representative, thereafter initialed the portion of the contract indicting the assignment was "With Limited Recourse for first 2 months of contract."

Defendants filed an answer to the complaint generally denying any liability to Plaintiff. Defendants also filed a Motion to Dismiss alleging, among other things, that the "With Limited Recourse" provision in the Assignment barred all claims made after two months, including claims for breach of warranty. More specifically, Defendants claimed the lawsuit was barred because the underlying contract and Assignment were entered into on November 22, 2000, and Plaintiff was "suing under the contract and assignment for a time period that began accruing 'as of July 31, 2001' … clearly more than two (2) months after the contract was first entered [into]." Plaintiff responded to the Motion to Dismiss, maintaining the "With Limited Recourse" provision

in no way limits Plaintiff's available remedies under the Assignment if any of the twelve express "warranties are untrue."

After a hearing, Trial Court granted the motion and dismissed the lawsuit against both Defendants. In so doing, the Trial Court stated:

> 1.    The Court, giving the words of the contract/assignment at issue their ordinary meaning, and looking at the four corners of the contract/assignment at issue ascertains that at the time of contracting between the parties, the parties intended that Plaintiff could only seek recourse against the Defendants for the first two (2) months of the contract/assignment at issue, as specifically set forth in the contract/assignment at issue.
>
> 2.    Accordingly, the "With Limited Recourse for first 2 months of contract" applies to the entire contract/assignment at issue, including but not limited to any breach of warranty and/or contract payment claims by Plaintiff against Defendants.
>
> 3.    The contract/assignment at issue was entered on November 22, 2000. Therefore, Plaintiff had until January 22, [2001] to file any claims it had against Defendants, whether such claims be for breach of warranties, payments, and/or otherwise.
>
> 4.    Plaintiff failed to bring this action by January 22, [2001], and therefore, its cause of action against Defendants is barred by the terms of the contract/assignment at issue.

Plaintiff appeals, claiming the time limit for Plaintiff to seek recovery from Capitol Homes for breach of an express warranty was not limited by the language which states "With Limited Recourse for first 2 months of contract." We agree, and reverse the judgment of the Trial Court.

### Discussion

Our standard of review as to the granting of a motion to dismiss is set out in *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997). In *Stein*, our Supreme Court explained:

> A Rule 12.02(6), Tenn. R. Civ. P., motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint, not the strength of a plaintiff's proof. Such a motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not

-4-

constitute a cause of action. In considering a motion to dismiss, courts should construe the complaint liberally in favor of the plaintiff, taking all allegations of fact as true, and deny the motion unless it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994). In considering this appeal from the trial court's grant of the defendant's motion to dismiss, we take all allegations of fact in the plaintiff's complaint as true, and review the lower courts' legal conclusions *de novo* with no presumption of correctness. Tenn. R. App. P. 13(d); *Owens v. Truckstops of America*, 915 S.W.2d 420, 424 (Tenn. 1996); *Cook*, *supra*.

In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Federal Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002)(citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Services of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co.*, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Id*. (quoting 17 Am. Jur. 2d, *Contracts*, § 245).

This Court's initial task in construing the contract at issue, here the Assignment, is to determine whether the language of the contract is ambiguous. *Planters Gin Co.*, 78 S.W.3d at 890. If the language is clear and unambiguous, the literal meaning of the language controls the outcome of the dispute. *Id*. A contract is ambiguous only when its meaning is uncertain and may *fairly* be understood in more than one way. *Id.* (emphasis added). If the contract is found to be ambiguous, we then apply established rules of construction to determine the intent of the parties. *Id*. Only if ambiguity remains after applying the pertinent rules of construction does the legal meaning of the contract become a question of fact. *Id*.

On appeal, Plaintiff argues Capitol Homes warranted the twelve underlying conditions in connection with the Assignment and then entered into an additional agreement with Plaintiff regarding what would transpire if the contract was not paid by the obligor during the first two months. Plaintiff argues:

[I]t cannot be reasonably concluded that this additional agreement relating to non-payment recourse operates to cancel or limit [Plaintiff's] remedy for any breach of the separate warranties made by [Capitol Homes] to induce [Plaintiff] to purchase and take assignment of the subject contract.

Capitol Homes argues the Trial Court was correct when it concluded the effect of the provision "With Limited Recourse for first 2 months of contract," in the context of the entire contract, "clearly indicated that said term applied to all the remedies set forth in the Contract," including any claimed breach of the twelve express warranties.

This Court was confronted with a somewhat similar situation in *Advantage Funding Corp. v. Mid-Tennessee Mfg. Co., Inc.*, No. M1997-00133-COA-R3-CV, 2000 Tenn. App. LEXIS 38 (Tenn. Ct. App. Jan. 27, 2000), *no appl. perm appeal filed*. In that case, the plaintiff, Advantage Funding Corp., purchased an accounts receivable from the defendant, Mid-Tennessee Manufacturing Co., Inc. ("Company"). The relevant documents provided: (1) the sale of the account receivable would be without recourse; (2) the Company warranted the amount of the receivable was not and would not be in dispute, and the account was not and would not be subject to defenses, set-offs, or counterclaims, and (3) the Company's president, Mr. Hall, would provide his individual guarantee securing these warranties. *Advantage Funding*, 2000 Tenn. App. LEXIS 38, at * 3. Thereafter, the underlying debtor, John Farmer and Associates, Inc., refused to pay the receivable because some of the purchased items were allegedly defective, thereby disputing the amount of the receivable. Once this happened, Advantage Funding sued both the Company and Mr. Hall ("Hall"). Following a bench trial, the Trial Court awarded a judgment against the Company for $21,377.87, plus pre-judgment interest and attorney fees.[1] The Trial Court, however, dismissed the claim against Hall, concluding, among other things, that there was insufficient evidence of a breach of warranty. 2000 Tenn. App. LEXIS 38, at * 7.

On appeal, this Court discussed the nature of the factoring agreement at issue in that case as follows:

A nonrecourse factor, like [plaintiff] Advantage Funding, takes the risk for collecting the assigned receivable with no right back against the assignor as long as the assignor, if the seller of the goods, has delivered the goods and the buyer has accepted them without dispute. *See Takisada Co. v. Ambassador Factors Corp.*, 556 N.Y.S.2d 788, 789 (N.Y. Sup. Ct. 1989). The factoring agreement in this case reflects this arrangement in that it provides that if Farmer did not pay the assigned account, Mid-Tennessee Manufacturing would not be obligated to repay Advantage Funding. Thus, the assignment of the account to Advantage Funding generally shifted the risk of

---

[1] The Company apparently did not contest the lawsuit. 2000 Tenn. App. LEXIS 38, at *6.

collection from Mid-Tennessee Manufacturing to Advantage Funding.

We use the term "generally" with regard to shifting the risk of collection because the agreement also contains provisions designed to protect Advantage Funding in the event of a disputed account. These protections are in the form of express warranties stating that

> Seller [Mid-Tennessee Manufacturing] represents and warrants that: ....
>
> (c) The Account is currently due and owing to Seller and the amount thereof is not and will not be in dispute or subject to any defenses, and the payment of the Account is not and will not be contingent upon the fulfillment of any past, existing or future contract(s).
>
> (d) There are no set-offs or counterclaims against the Account....

*Advantage Funding*, 2000 Tenn. App. LEXIS 38, at \*\*17, 18. In addition, this Court noted that Hall had signed a personal guarantee which stated "[t]he undersigned hereby personally guarantee(s) and shall be jointly and severally liable for the warranties, representations and covenants made by Mid-Tennessee...." *Id.*, at \*\*18, 19.

In resolving the issue on appeal in *Advantage Funding*, we concluded once the debtor disputed the account, regardless of whether the dispute was meritorious, the warranty in the agreement was breached, and the plaintiff had the right to seek damages. *Id*., at \* 19. We then concluded as follows:

> When we construe the factoring agreement and Mr. Hall's guarantee together, as we must, *see Oman Constr. Co. v. Tennessee Cent. Ry. Co.*, 212 Tenn. 556, 573, 370 S.W.2d 563, 570 (1963); *Hardeman County Bank v. Stallings,* 917 S.W.2d 695, 698 (Tenn. Ct. App. 1995), the legal conclusion becomes inescapable. Mid-Tennessee Manufacturing's breach of the "no-dispute" warranties as to the Farmer account brought into play Mr. Hall's guarantee of those warranties. Because those warranties had been breached, Mr. Hall became personally liable, jointly and severally with Mid-Tennessee Manufacturing, under the guarantee's terms. Accordingly, the trial court improperly dismissed Advantage Funding's case against Mr. Hall personally.

*Advantage Funding*, 2000 Tenn. App. LEXIS 38, at *20.

We acknowledge *Advantage Funding* is not squarely on point since the effect of the nonrecourse provision on the express warranties was not directly at issue. Nevertheless, *Advantage Funding* is helpful with its discussion of how the factoring agreement in that case generally operated. In *Advantage Funding*, even though the agreement was without recourse, this Court noted Advantage Funding nevertheless was protected by the express warranties if the account became disputed. When the account in fact became disputed, a breach of warranty occurred, notwithstanding the fact that the agreement was without recourse. We believe the same result is proper in the present case based on the natural and ordinary meaning of the language used in the Assignment. In our opinion, the provision in the Assignment which states it is "With Limited Recourse for first 2 months of contract" means only that if Ford had defaulted on her contractual payments in the first two months, Plaintiff could have recovered the outstanding balance of the contract from Capitol Homes. After that two month period, Plaintiff would have no recourse against Capitol Homes if Ford defaulted on her payments.[2] However, this language cannot fairly or reasonably be construed to limit to two months the time period in which Plaintiff could make a claim against Capitol Homes for breach of one of the twelve express warranties.

The Trial Court concluded the relevant language limited the time period in which Plaintiff could sue for breach of an express warranty to two months. If that were the case, and taking it to the next logical step, if the Assignment had been "Without Recourse," then Plaintiff would have had absolutely no time in which to bring suit against Capitol Homes for breaching one or more of the twelve express warranties it made to Plaintiff. This result would make the express warranties meaningless. We conclude the contractual language at issue can fairly be understood in only one way, and it is not ambiguous. We hold the two month period provided for in the limited recourse provision does not apply to or limit Plaintiff's claim for alleged breaches of the express warranties. The judgment of the Trial Court is, therefore, reversed.

## Conclusion

The judgment of the Trial Court is reversed and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion. The costs on appeal are assessed against the Appellee, Capitol Homes, LLC.

_____
D. MICHAEL SWINEY, JUDGE

---

[2] Of course, Ford is subject to being sued by Plaintiff if she defaults on her payments regardless of whether or not Plaintiff had recourse against Capitol Homes.